**In the Matter of Claims Against the KERN GRAIN COMPANY.**

No. C2–84–2146.

Court of Appeals of Minnesota.

June 18, 1985.

Review Denied Aug. 29, 1985.

James Reding, St. Paul, for Auto-Owners Ins. Co.

James Dailey, Mankato, for Kern Grain Co.

Paul V. Sween, Austin, for respondent Wendell Schiester.

David L. Einhaus, Owatonna, for respondent James Dusek.

Frederick Gray, Rochester, for respondent Vern Berg.

David A. Rockne, Zumbrota, for respondent Owen Knutson.

Clifford W. Gardner, Janesville, for respondent Wayne Trahms.

Franklin D. Peterson, Kenyon, for respondent Earl Peters.

Timothy D. Moratzka, Hastings, for respondent Timothy D. Moratzka.

Ian T. Ball, Minneapolis, for respondent William Ableidinger.

Paul E. Rockne, Zumbrota, for intervenor Kenneth Lee.

Hubert H. Humphrey, III, Atty. Gen., Jon K. Murphy, Sp. Asst. Atty. Gen., Minn. Dept. of Agriculture, St. Paul, for respondent James Nichols, Comm'r., Minn. Dept. of Agriculture.

Heard, considered and decided by RANDALL, P.J., and SEDGWICK and HUSPENI, JJ.

## OPINION

RANDALL, Judge.

This contested case proceeding was to determine which (if any) of the 41 claims against warehouseman's bonds issued to Kern Grain Company by Auto-Owners In-

surance Company should be allowed. After a hearing, the administrative law judge recommended allowance of all claims, and recommended that recovery be allowed against the 1979–80 storage bond, the 1980–81 storage bond, the 1981–82 storage bond, and the 1981–82 sale bond. The Commissioner of Agriculture accepted the administrative law judge's recommendations, and Auto-Owners sought review. We affirm.

## FACTS

Kern Grain Company ("Kern") was a public grain storage facility owned and operated by Phyliss and Jerry Kern. For a fee, it stored farmers' crops during times of low prices to be sold when prices rose. It also bought crops from farmers to sell for itself when prices rose. When its own storage facilities proved inadequate, it used "price-later" storage in the Twin Cities owned by Archer-Daniel-Midland and other large grain dealers. It is not clear whether Kern told its customers that its storage in the Twin Cities was "price-later" storage rather than "open" storage. "Price-later" storage means that title to the stored grain is transferred to the warehouseman; open storage means the farmer retains title. Kern advertised in local newspapers that it had large storage capacity even when other storage facilities were full. The ads did not mention "price-later storage," sale of the grain, or "open storage."

In early 1982, Kern began to have financial difficulties, and was, at times, unable to meet farmers' demands for the proceeds of the sale of their grain. In April of 1982, Kern's bankers decided not to extend more credit, and the Kerns held an auction and sold off their own farm machinery to raise capital for the grain company. Rumors about the company's impending demise spread among area farmers throughout the spring of 1982, but Kern sought to squelch them by distributing "newsletters" to its customers assuring them that, while there had been difficulties, their money and grain were in no danger. The last of these news-letters was distributed in June 1982, and on July 14, 1982, Kern filed for bankruptcy.

The first claim against Kern was filed with the Minnesota State Department of Agriculture on April 26, 1982, by claimant Berg. Other claims were made throughout the summer and early fall, and the last—and largest—group of claims was filed with the agriculture department on November 26, 1982.

Auto-Owners Insurance Company, the relator here, supplied storage and sale bonds to Kern throughout the life of the company. The bonds ran from July 1 of each year through June 30 of the next, and had to be renewed each year. Under the applicable statute, the bonds ran in favor of the agriculture department for the benefit of all persons storing grain in the warehouse or selling grain to the warehouseman, and were conditioned upon "the faithful performance * * * of all the provisions of law relating to the storage of grain by such warehouseman and the rules and regulations of the * * * [department of agriculture], and further conditioned that the applicant will pay to the owner on demand the purchase price of grain sold to the applicant." Minn.Stat. § 232.13 (1980).

## ISSUES

1. Did the Commissioner of Agriculture err in finding that all claims against the warehouseman's bonds were timely filed?

2. Was the commissioner's finding that all claimants had intended open storage of their grain rather than a sale, "price later" storage, or extension of credit to Kern supported by substantial evidence in view of the entire record as submitted?

3. Did the commissioner err in finding that recovery could be had against the 1979–80 storage bond, the 1980–81 storage bond, the 1981–82 storage bond, and the 1981–82 sale bond?

## ANALYSIS

*Scope of review*

In reviewing decisions of an administrative agency the court is governed by Minn. Stat. § 14.69 (1982) which provides:

In a judicial review under sections 14.63 to 14.68, the court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:

(a) In violation of constitutional provisions; or

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

■ Accompanying the statutory standards is a presumption that agency decisions are correct, "out of deference to agency skill and technical expertise * * *." *Crookston Cattle Co. v. Minnesota Department of Natural Resources*, 300 N.W.2d 769, 777 (Minn.1980) (quoting *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 824 (Minn.1977). Where the evidence is conflicting or more than one inference may be drawn from the evidence, findings of the hearing examiner must be upheld. *State by Gomez-Bethke v. Office of County Auditor, Douglas County*, 347 N.W.2d 541 (Minn.App.1984).

■ The substantial evidence test is used to review factual findings of an agency. *Peoples Natural Gas Co. v. Minnesota Public Utilities Commission*, 342 N.W.2d 348, 351 (Minn.App.1983). In *Taylor v. Beltrami Electric Cooperative, Inc.*, 319 N.W.2d 52, 56 (Minn.1982) the Minnesota Supreme Court quoted the following definition of substantial evidence from *Reserve Mining Co. v. Herbst*, 256 N.W.2d at 825:

1) [S]uch relevant evidence as a reasonable mind might accept as adequate to support a conclusion; 2) more than a scintilla of evidence; 3) more than "some evidence"; 4) more than "any evidence"; and 5) evidence considered in its entirety.

There are correlative rules or principles that must be recognized by a reviewing court, such as: 1) unless manifestly unjust, inferences must be äccepted even though it may appear that contrary inferences would be better supported; 2) a substantial judicial deference to the fact-finding processes of the administrative agency; and 3) the burden is upon the appellant to establish that the findings of the agency are not supported by the evidence in the record, considered in its entirety.

■ A separate basis for rejecting an agency's decision is the arbitrary or capricious standard. *Peoples* at 351. Where an agency's decision represents its judgment, and not its will, the agency has not acted arbitrarily. *Id.* at 352; *see Markwardt v. State Water Resource Board*, 254 N.W.2d 371, 374 (Minn.1977). If the agency has erred in its interpretation or application of the existing law to the facts it has found, its decision may be rejected. *See Northern States Power Co. v. Minnesota Public Utilities Commission*, 344 N.W.2d 374 (Minn.1984), *cert. denied*, —— U.S. ——, 104 S.Ct. 3546, 82 L.Ed.2d 850.

## I.

### Timeliness

Auto Owners challenges the commissioner's decision on the timeliness of the various claims against the bonds on three fronts:

A) the agency's interpretation of the time provisions in the statute;

B) the factual findings regarding when each claimant knew of the breach of conditions of the bond; and

C) the commissioner's finding that the agency has authority to marshall claims upon its own initiative.

■ Statutory interpretation: The statute at issue provides, in relevant part:

Any person claiming to be damaged by a breach of the conditions of a bond given by an applicant or licensee may enter

complaint thereof to the department, which complaint shall be a written statement of the facts constituting the complaint and shall file it in the office of the secretary of the department within six months from breach of the conditions of the bond.

Minn.Stat. § 232.13 (1980). (The statute has since been amended to provide 180 days to file the complaint rather than 6 months.) Claimants maintain that the statute is unambiguous, and that the only possible interpretation of it is that each claimant has 6 months from the time the conditions of the bond were breached *as to that claimant* to file a claim. Auto Owners argues, however, that the agency has interpreted the statute as giving claimants six months from the time *the first claim* was filed to file claims, and such interpretation should control. A longstanding administrative interpretation of an ambiguous statute is entitled to great weight. *Mankato Citizens Telephone Co. v. Commissioner of Taxation,* 275 Minn. 107, 145 N.W.2d 313 (1966).

We find, however, that the statute is unambiguous. The statute states that each claimant has six months from the time the conditions of the bond were breached *as to him* to file his claim. Auto Owners cites to *Cable Communications Board v. Nor-West Cable Communications Partnership,* 356 N.W.2d 658 (Minn. 1984) for its contention that a past interpretation by an agency is binding. That case, however, refers to an agency's interpretation of *its own rules,* not of a statute. When a statute is unambiguous, the wording of the statute controls.

Knowledge of breach: Auto Owners next argues that if the Commissioner did interpret the statute correctly, most claimants still did not file their claims timely, since 38 of the 41 claimants had demanded payment or the return of their grain by May 13, 1982. Kern's failure to comply with those demands constituted a breach, Auto Owners argues, and those claimants thus had only until November 13, 1982 to file their claims. The largest group of claims were not filed until November 26. Auto Owners also points to the general community knowledge of Kern's financial condition as proof that all claimants knew by the end of April that conditions of the bond had been breached.

The argument has merit. The administrative law judge found, however, as a matter of fact, that all claimants did not know of the breach until the Kerns actually filed for bankruptcy on July 14. The evidence in the record shows that the Kerns deliberately tried to soothe the fears of their customers, and many of the customers still hoped, after April, that the Kerns would be able to work their financial troubles out and be able to pay them. The finding of fact cannot be set aside unless it is without substantial evidence in the record as a whole. While the record shows evidence of rumors about Kern's imminent collapse, the record also shows the Kerns gave their customers false reassurances that things would pick up and their trust in the Kerns would be rewarded. Reliance upon written assertions by the Kerns rather than on rumor should not now be punished. The finding that many of the claimants did not know of the breach for certain until July 14 was supported by substantial evidence.

Authority to marshall claims: The Commissioner supplemented the administrative law judge's findings by finding that, even if all of the claims were not timely filed, the agriculture department knew of the claims within the six months period, and the agency has "authority to marshall claims upon its own initiative." Auto Owners argues this exceeds the agency's powers. Since we have found that all claims were timely filed, however, we need not decide whether the Commissioner erred in this finding.

## II.

*"Open storage" vs. sale:*

Auto Owners challenges the Commissioner's factual findings that all claimants under the bonds had turned over their grain to Kern for open storage rather

than for "price later" storage, outright sale, or as an extension of credit to the Kerns. Factual findings of an agency are entitled to a presumption of correctness. Where the evidence is conflicting or where more than one inference may be drawn from the evidence, factual findings of the hearing examiner will be upheld. *State by Gomez-Bethke v. Office of County Auditor, Douglas County*, 347 N.W.2d at 543.

 Here, we do not even find the existence of conflicting evidence. All competent evidence supports the inference that the claimants intended their grain for open storage. Auto Owners argues that because claimants did not have warehouse receipts, they were estopped from claiming open storage contracts. That argument overlooks the fact that Kern's failure to issue appropriate warehouse receipts was itself a breach of the conditions of the bond. Kern is estopped from arguing their own failure to issue receipts negates the farmers' right to file claims. It was Kern's duty to issue appropriate receipts to the farmers. Auto Owners may not now argue that claimants to whom Kern breached this duty should not recover because of a breach of Kern's. The finding that all claimants intended open storage of their grain was supported in the record.

### III.

*Applicable bonds:*

 Auto Owners argues that the only bond against which recovery could be had is the 1981–82 bond, since Kern's failure took place during the coverage dates of that bond. The Commissioner found that the 1979–80 bond and the 1980–81 bonds were also applicable.

The Commissioner's decision was based upon the premise that Kern converted grain belonging to claimants as soon as the grain was delivered. While the breach of the conditions of the bond did not actually occur until spring or summer of 1982 when Kern could not give claimants their money, the wrong (the conversion) which led to the breach took place whenever the grain was delivered to them. Grain belonging to claimants was delivered to Kern as early as 1979–80. The bond was issued to protect against malfeasance by the warehouse. Minn.Stat. § 232.13. When such malfeasance as conversion occurred during the time period covered by the bond, recovery may be had against that bond. We do not find the Commissioner's decision to be a misapplication of the law.

### DECISION

There is substantial evidence in the record to support the Commissioner's findings that the claims were timely filed, that all claimants intended open storage of grain, and that recovery should be allowed against all the bonds.

Affirmed.