HONEYWELL, INC., et al., Plaintiffs,

v.

MINNESOTA LIFE AND HEALTH
INSURANCE GUARANTY AS-
SOCIATION, Defendant.

No. C1–93–2470.

Supreme Court of Minnesota.

June 30, 1994.

Gary J. Haugen, Jonathan S. Parritz, Min-
neapolis, for Minnesota Life and Health Ins.
Guar. Assoc.

David L. Hashmall, Karen R. Cole, Steven
E. Reichert, Minneapolis, for Honeywell, Inc.

Hubert H. Humphrey, III, Atty. Gen.,
Carolyn Ham, Asst. Atty. Gen., St. Paul, for
amicus curiae State of Minn.

## OPINION

TOMLJANOVICH, Justice.

The United States District Court, District of Minnesota, Third Division has certified to this court, pursuant to Minn.Stat. § 480.061 (1992), two questions of law pertaining to the effect of a 1992 amendment to the Minnesota Life and Health Insurance Guarantee Association Act, Minn.Stat. §§ 61B.01–.16 (1992). We answer the first certified question by holding that the 1992 amendment to the Act's definition of "contractual obligation" effects a substantive change in those obligations, and answer the second certified question by holding that the right to payment created in favor of annuity contract owners in Minn. Stat. § 61B.06, subd. 2 is a purely statutory right under state law.

The federal district court based the questions certified upon the entire record in this matter and upon the following statement of facts:

The plaintiffs in this action are Honeywell Inc. and the Honeywell Pension & Retirement Committee, on their own behalf and on behalf of the Honeywell Retirement Investment Plan, Investment Plus Plan of Honeywell Inc. and the Honeywell Retirement Savings Plan, and First Trust National Association (collectively "Honeywell"). The defendant is the Minnesota Life and Health Insurance Guaranty Association ("the Association"); the Association was created pursuant to the Minnesota Life and Health Insurance Guaranty Association Act (the "Act"), Minn.Stat. § 61B.01–.16 (1992), and is comprised of entities authorized to transact insurance in Minnesota or any other kind of business to which the Act applies.[1] The Association is controlled by a nine-member Board of Directors selected by Association members and approved by the Commissioner of Commerce of the State of Minnesota.[2] *Id.* §§ 61B.03, subd. 14 & 61B.04–.05, subd. 1.

*The Act and the 1992 Amendment*

Under the Act, where a foreign insurer is placed under an order of liquidation, rehabilitation, or conservation, the Association

shall, subject to any conditions imposed by the association and approved by the commissioner, guarantee, assume or reinsure, or cause to be guaranteed, assumed, or reinsured, the covered policies of *residents,* and shall make or cause to be made prompt payments of the impaired insurer's contractual obligations which are due and owing to *residents.*

Minn.Stat. § 61B.06, subd. 2 (emphasis added). The term "resident" is defined as "any *person* who resides in this state at the time the impairment is determined and to whom contractual obligations are owed." *Id.* § 61B.03, subd. 13 (emphasis added). The term "person" means "any individual, corporation, partnership, association or voluntary organization." *Id.* § 61B.03, subd. 12. Finally, prior to 1992, the term "contractual obligation," was defined as "any obligation owed under covered policies." *Id* § 61B.03, subd. 5. Under the Act, then, all residents are persons, but not all persons are residents; a person to whom an insurer does not owe a contractual obligation is not a resident for purposes of the Association's guarantee and payment obligations.

The dispute in this action arises out of a 1992 amendment to the definition of "contractual obligation";[3] the Amendment was one of a number of amendments to the Act which were enacted in 1992.[4] *See* 1992

---

1. Insurers are required to join the Association as a condition of receiving authority to transact insurance in Minnesota. Minn.Stat. § 61B.04 (1992).

2. The Commissioner has general supervisory authority over the Association.

3. Hereafter, the amendment to the definition of "contractual obligation" will be referred to as "the Amendment."

4. The Act was originally enacted in 1977. 1977 Minn.Laws, ch. 273, and was amended several times during the years 1980 to 1992.

In 1993, the Minnesota Legislature reworked the Act, repealing Minn.Stat. §§ 61B.01–.16 and replacing them with Minn.Stat. §§ 61B.18–.32. 1993 Minn.Laws, ch. 319. The legislature provided that the 1993 amendments would apply prospectively; it further provided that the Association's obligations, as they relate to the Executive Life Insurance Corporation ("ELIC") rehabilita-

Minn.Laws, ch. 540. As amended, "contractual obligation" means, in pertinent part:

(a) "contractual obligation" means any obligation under covered policies, except as provided in subparagraphs (c) and (d) of this subdivision.

(b) For purposes of this chapter, contractual obligation includes an unallocated annuity contract which funds a qualified defined contribution pension plan pursuant to Internal Revenue Code of 1986, sections 401(k), 403(b), and 457.

(c) Notwithstanding the definition of contractual obligation contained in paragraphs (a) and (b), contractual obligation does not include any obligation to non-resident participants of a covered plan or to the plan sponsor, employer, trustee, or other party who owns the contract; in such cases, the association is obligated under this chapter only to participants in a covered plan who are residents of the state of Minnesota on the date of impairment.

*Id.* The legislature specifically provided that the Amendment was to apply retrospectively. 1992 Minn.Laws, ch. 540, § 23. The 1992 amendments to the Act were presented to the Governor on April 17, 1992 and signed into law on April 27, 1992.

*The Dispute Between Honeywell and the Association*

In early 1988, Honeywell, on behalf of one of its pension plan funds, the Fixed Income Fund, invested in guaranteed investment contracts[5] ("GIC's") issued by Executive Life Insurance Corporation ("ELIC"), a California insurer. As is generally required by ERISA, the assets of the Plans are owned by a trustee. 29

U.S.C. § 1103(a). At all times relevant to this action, IDS Bank and Trust Company ("IDS") was the trustee.[6] Under ERISA then, all ELIC GIC's purchased by Honeywell were owned by IDS as trustee for the Plans.

On April 11, 1991, the California Insurance Commissioner placed ELIC into conservatorship. As a result of the conservatorship, the portion of the Fixed Income Fund assets invested in ELIC GIC's has been "isolated," that is, segregated from the other assets of the Fixed Income Fund; those monies are not available, for any purpose, to participants in the Fixed Income Fund. The conservatorship proceedings have impacted participants because they cannot transfer the amount of their contributions in ELIC to other, more secure, investments. Currently, ELIC is undergoing a "rehabilitation" process, under which the affected participants may eventually recoup all or a portion of the assets currently isolated.

By letter dated January 10, 1992, Honeywell's Pension and Retirement Committee claimed coverage under the Act for the ELIC GIC's.[7] The Association neither denied nor granted this claim; however, following the enactment of the Amendment, the Association has taken the position that it is only required to guarantee and pay the losses incurred by individual plan participants who resided in Minnesota when ELIC was determined to be impaired; thus, the passage of the Amendment impacted, negatively, Honeywell's pending claim for coverage.

Honeywell commenced this action on March 11, 1993; it claims that because IDS is a Minnesota "resident" under the Act, the version of the Act in existence

---

tion, are governed by Minn.Stat. §§ 61B.01–.16. *Id.* § 19.

**5.** Typically, GIC's are issued for a term of four to five years and bear a fixed rate of interest. GIC's are, theoretically, risk-free investments, as the issuer guarantees the safety of the principal and provides a predictable return on the amount invested.

GIC's are a variety of "unallocated annuity contracts." *Minnesota Life & Health Ins. Guar. Ass'n v. Department of Commerce,* 400 N.W.2d 769, 770, 774 (Minn.App.1987). As a result,

section 61B.03, subd. 5(b) specifically provides that "contractual obligation" includes GIC's which fund pension plans such as the Plans.

**6.** On February 8, 1993 First Trust Company, of St. Paul, Minnesota, was appointed successor trustee to IDS.

**7.** Because ELIC is a "foreign" insurer for purposes of the Act, the Association's coverage obligations, if any, are governed by Minn.Stat. § 61B.06, subd. 2.

prior to the Amendment unambiguously required the Association to guarantee and make good any obligations ELIC owed to IDS, the legal owner of the GIC's. Honeywell contends that because the Association wished to avoid Honeywell's claim, it caused the Minnesota Legislature [to] pass the Amendment. Honeywell further contends that the legislature's retrospective application of the Amendment to defeat its claim violates both the federal and state constitutions.

In its Complaint, Honeywell raises seven claims: Count I—violation of the Act; Count II—breach of contract; Count III—violation of the Contracts Clause of Article I, section 10 [of] the United States Constitution; Count IV—violation of the Contracts Clause of * * * Article 1, section 11 of the Minnesota Constitution; Count V—violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution; Count VI—violation of the Due Process Clause of article 1, section 7 of the Minnesota Constitution; and Count VII—violation of fiduciary duty. (Order of Certification, Kyle, J., Civil No. 3–93–260, dated Dec. 6, 1993).

The district court certified to this court the following two questions of law:

1. Did the 1992 amendment to the Act's definition of "contractual obligation," to wit:

> (c) Notwithstanding the definition of contractual obligation contained in paragraphs (a) and (b), contractual obligation does not include any obligation to nonresident participants of a covered plan or to the plan sponsor, employer, trustee, or other party who owns the contract; in such cases, the association is obligated under this chapter only to participants in a covered plan who are residents of the state of Minnesota on the date of impairment * * *

1992 Minn.Laws, ch. 540 § 5(c), *codified at* Minn.Stat. § 61B.03, subd. 5(c) (1992), clarify the Association's coverage obligations under the Act or effect a substantive change in those obligations?

2. Is the right to payment created in favor of annuity contract owners in Minn.

Stat. § 61B.06, subd. 2 a purely "statutory" right or a right that is "contractual" in nature?

*Id.* These questions were certified for review by this court on December 10, 1993.

### I

██ We consider first whether the 1992 amendment ("the Amendment") to the Act's definition of "contractual obligation" clarifies pre-existing law or substantively changes it. Under the Amendment, the Association must provide coverage to resident employees who are the beneficiaries of defined-contribution pension plans funded by unallocated annuity contracts; the Association has no obligation to provide coverage to non-resident employees and has no obligation to provide coverage to plan trustees or plan sponsors. Honeywell claims that the Amendment substantively changed the Association's coverage obligations. We agree.

The version of the Act prior to the Amendment provides that where a foreign insurer is placed under an order of liquidation, the Association

> shall, subject to any conditions imposed by the association and approved by the commissioner, guarantee, assume, or reinsure or cause to be guaranteed, assumed, or reinsured, the covered policies of *residents*, and shall make or cause to be made prompt payments of the impaired insurer's contractual obligations which are due and owing to residents.

Minn.Stat. § 61B.06, subd. 2 (1990) (emphasis added). The term "resident" is defined as "any *person* who resides in this state at the time the impairment is determined and to whom contractual obligations are owed". Minn.Stat. § 61B.03, subd. 13 (emphasis added). The term "person" is defined as "any individual, corporation, partnership, association or voluntary organization." Minn.Stat. § 61B.03, subd. 12. The term "contractual obligation" is defined as "any obligation under *covered policies.*" Minn.Stat. § 61B.03, subd. 5 (emphasis added). The term "covered policy" is defined as "any policy or contract *owned* by a Minnesota resident to which sections 61B.01 to 61B.16 apply, as

provided in section 61B.02." Minn.Stat. § 61B.03, subd. 6 (emphasis added). The term "owner" is not defined.

Unallocated annuity contracts, including Guaranteed Investment Contracts ("GIC's"), are ordinarily understood not to be owned by individual employees who are participants in pension plans which invest in these contracts. Rather, these contracts are deemed to be owned by either a plan trustee or a plan sponsor who is the contract holder. *See, e.g.,* Model Life and Health Guaranty Association Act § 5(n) (Nat'l Ass'n of Insurance Comm'rs 1985) (defining unallocated annuity contracts as "any annuity contract or group annuity certificate which is not issued to or owned by an individual"); *Minnesota Life & Health Ins. Guar. Ass'n v. Department of Commerce,* 400 N.W.2d 769, 770 (Minn.App.1987) (defining unallocated annuity contracts as contracts "not issued to or owned by a named individual").[8] The Employee Retirement Income Security Act (ERISA) generally requires that the assets of unallocated annuity contracts be held by a plan trustee. ERISA provides that the trustee and not plan participants have the sole responsibility to manage and control plan assets. *See* 29 U.S.C. § 1103(a).

The GIC's which Honeywell contends the Association must guarantee (those issued by ELIC to IDS on behalf of Honeywell) expressly provide that IDS, the plan trustee, is the contract owner. Plan participants are defined as "individual[s] on whose behalf the *Owner* will purchase or provide retirement benefits" (emphasis added). These GIC's further provide that "the owner may exercise every contract right and enjoy every contract privilege without the consent of any participant."

We agree with Honeywell that resident trustees who own unallocated annuity contracts are unambiguously entitled to coverage under the terms of the Act prior to the Amendment.[9] Unallocated annuity contracts are "covered policies" under the Act. *Minnesota Life,* 400 N.W.2d 769. The Association is obligated to guarantee the covered policies of residents. A "resident" is a person residing in Minnesota "to whom contractual obligations are owed." A "person" may be a corporation. In the absence of statutory language to the contrary, there can be no doubt that a plan trustee who owns an unallocated annuity contract is a person to whom contractual obligations are owed.

The Association argues that our interpretation of the pre-Amendment Act results in an unintended windfall for non-resident employees who are participants in pension plans with a Minnesota trustee. Given that unallocated annuity contracts were not prevalent at the time of the statute's enactment in 1977, the legislature likely did not contemplate how the Act specifically applied to these contracts. We believe the Association's argument that the legislature did not intend to provide coverage to resident plan trustees is misplaced, however, where resident contract owners are plainly entitled to coverage under the Act. *See* Minn.Stat. § 645.16 (1992) ("When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit").

Nothing in the Act prior to its Amendment limits the Association's coverage obligations to natural persons. To the contrary, the term "person" is defined broadly to include corporations, partnerships, associations and voluntary organizations. Moreover, nothing in the Act prior to its Amendment limits an Association's obligation to non-resident beneficiaries of a covered plan.

Providing coverage to resident owners of unallocated annuity contracts is consistent with the Act's stated purpose which is:

**8.** The court of appeals in *Minnesota Life* held that unallocated annuities are covered generally under the Act and therefore should be included in the Association's assessment base.

**9.** The parties debate whether under state trust law pension plan participants might be construed as having an equitable ownership interest in unallocated group annuity contracts. We

need not determine here the precise nature of a beneficiary's interest in trust property generally. We simply observe that in the context of an unallocated annuity contract, it is ordinarily understood that the "owner" is the contract holder, not the individual plan participants who are the ultimate beneficiaries of the contract.

to protect policyowners, death benefit certificate holders, insureds, beneficiaries, annuitants, payees, and assignees of life insurance policies, health insurance policies, annuity contracts, and supplemental contracts, subject to certain limitations against failure in the performance of contractual obligations due to the impairments of the insurer issuing the policies or contracts.

Minn.Stat. § 61B.02, subd. 2. Providing coverage to resident owners of an unallocated annuity contract is also the approach followed by the 1985 National Association of Insurance Commissioners' Model Act and at least 14 states have adopted this version of the Act.[10]

We also find it significant that the Association prior to 1992 assessed insurers issuing unallocated annuity contracts based upon the amount of premiums received from resident contract owners, not based upon amounts attributable to individual resident beneficiaries.[11] One expects the Association would not have assessed members based upon the amount of premiums received from resident contract owners if it understood coverage obligations to be owed solely to resident plan participants.

We conclude that the 1992 Amendment to the Act's definition of "contractual obligation" substantively changed the Association's coverage obligations. Prior to the Amendment the Association was obligated to provide coverage to resident plan trustees who owned unallocated annuity contracts on behalf of defined contribution pension plans. Following the Amendment's enactment, the Association became obligated to provide coverage solely to resident plan participants who are the beneficiaries of unallocated annuity contracts.

█ Upon adopting the 1992 Amendment, the legislature specified that it "intended to clarify existing law" and that the Amendment applied retroactively. The Association suggests that we are obligated to defer to the legislature's characterization of the Amendment as a "clarification." We are not. In determining whether an amendment substantively modifies prior law, we are not bound by a "clarifying" label, but analyze the intent and purpose of the original statute. *Rural American Bank of Greenwald v. Herickhoff,* 485 N.W.2d 702, 709 (Minn.1992) (Special Concurrence of Justice Simonett).[12] The 1992 legislature is not the interpreter of laws enacted by the 1977 legislature. *See Anderson v. Firle,* 174 Minn. 333, 219 N.W. 284, 285 (1928). If we were always to accept a legislature's characterization of an amendment as a "clarification," we would effectively be abandoning our power to interpret the law.

The Association additionally points to a letter sent on January 21, 1992 from Department of Commerce Assistant Commissioner Rochelle Bergin to the Association which expresses the position that the pre-Amendment Act provides coverage to resident plan participants but not to non-residents. The Association argues that we should defer to the

---

10. Alaska Stat. § 21.79.020(a)(2) (1993); Ark. Code Ann. § 23–96–107(a)(2) (Michie 1992); Del.Code Ann. tit. 18, § 4403 (1992); Ga.Code Ann. § 33–38–2 (Michie 1990); Ill.Ann.Stat. ch. 215, para. 5/531.03(1)(b) (Smith–Hurd 1994); Iowa Code Ann. § 508C.3 (1994); Mich.Comp. Laws Ann. § 500.7704(1)(b)(2) (West 1993); Miss.Code Ann. § 83–23–205(1)(b) (1991); N.J.Stat.Ann. § 17B.32A–3(a)(2) (West 1994); N.C.Gen.Stat. § 58–62–21(a)(2) (1993); N.D.Cent.Code § 26.1–38.1–01(1)(b) (1993); Ohio Rev.Code Ann. § 3956.04(A)(2) (Anderson 1993); Utah Code Ann. § 31A–28–103(1)(b) (1993); Wash.Rev.Code Ann. § 48.32A.020 (West 1994).

11. Under Minn.Stat. § 61B.07, member insurers are supposed to be assessed based on a pro rata share of premiums received on "policies cov-

ered" relative to total premiums received on business in the state by all assessed member insurers.

12. Where we have addressed legislative "clarifications," we ordinarily have been concerned with whether an amendment that seeks to "clarify" existing law should be given retroactive effect. *See Rural American Bank of Greenwald v. Herickhoff,* 485 N.W.2d 702, 706–707 (Minn. 1992), *City of Willmar v. Short–Elliott–Hendrickson, Inc.,* 475 N.W.2d 73, 76–77 (Minn.1991) and *Nardini v. Nardini,* 414 N.W.2d 184, 196 (Minn. 1987). Here, the legislature has specifically provided that the "clarifying" amendment should be given retroactive effect. Therefore, we are concerned solely with whether the Amendment is in fact a clarification or whether it is really a substantive modification of prior law.

Department of Commerce's interpretation of the statute as expressed in this letter.[13] We are not inclined to give it much weight where the meaning of the statute is unambiguous.

■ Finally, the Association argues that its position is supported by Minn.Stat. § 61B.06, subd. 8. This section limits the Association's liability to $100,000 in cash values or $300,000 in benefits with "respect to any one life." The Association argues that if a plan trustee is covered under the Act, then the trustee must be the "life" to which the limitation applies. We believe that the per-life limit is plainly inapplicable to a trustee or other non-natural person.

## II

■ The second certified question asks us to consider whether the right to payment in favor of annuity contract owners in Minn. Stat. § 61B.06, subd. 2 is a purely statutory right or a right that is contractual in nature. We hold that the right to payment is a purely statutory right under state law.

Honeywell argues that because the Act requires the Association to "guarantee" or "assume" contractual obligations, the Act creates contractual rights. We disagree. To the extent an annuity contract owner enjoys any rights against the Association, it is because they are set forth in a statute.[14] The Association's statutory obligations are not coextensive with the contractual obligations of a failed insurer. Under Minn.Stat. § 61B.06, subd. 2, the Association's obligations are "subject to any conditions imposed by the association and approved by the commissioner." Under Minn.Stat. § 61B.06, subd. 8, the aggregate liability of the Association is limited. The Commissioner may reduce the Association's obligations under Minn.Stat. § 61B.06, subd. 3.

There exists no contractual relationship between the Association and annuity contract owners. Honeywell argues that it is the third-party beneficiary of a contractual relationship among Association members. No such contractual relationship exists. Each member insurer is *required* by statute to participate in the Association as a condition of doing business in the state.[15]

Other state courts which have interpreted insurance guaranty association statutes have suggested that rights against guaranty associations are statutory in nature. *See Virginia Property and Casualty Ins. Guar. Ass'n v. International Ins. Co.*, 238 Va. 702, 385 S.E.2d 614 (1989); *Isaacson v. California Ins. Guar. Ass'n*, 44 Cal.3d 775, 244 Cal. Rptr. 655, 750 P.2d 297 (1988); *City of Greensboro v. Reserve Ins. Co.*, 70 N.C.App. 651, 321 S.E.2d 232 (1984). In *City of Greensboro*, for example, the North Carolina Court of Appeals held that prejudgment interest could not be assessed against an insurance guaranty association even though an insolvent insurer might have been liable for it in a breach of contract action. The court held that "the identity of the Association as a statutory creation · * * * relieves it from liability for prejudgment interest." 321 S.E.2d at 240.

We answer the first certified question by holding that the 1992 amendment to the Act's definition of "contractual obligation" effects a substantive change in those obligations. We answer the second certified question by holding that the right to payment created in favor of annuity contract owners in Minn. Stat. § 61B.06, subd. 2 is a purely statutory right under state law.

---

**13.** The Department of Commerce is the administrative agency charged with supervising the Association. *See* Minn.Stat. § 61B.04, subd. 2.

**14.** An annuity contract holder has contractual rights which may be asserted against the insurer, but these contractual rights are unaffected by the Act. Honeywell does not claim that the terms of the Act are an implied term in annuity contracts entered into between the insurer and the contract holder.

**15.** Honeywell cites *Scobee Combs Funeral Home v. E.F. Hutton & Co.*, 711 F.Supp. 605, 608 (S.D.Fla.1989), which held that a customer was a third-party beneficiary of a National Association of Securities Dealers (NASD) Manual requiring members to arbitrate on demand. *Scobee* is clearly distinguishable from this case, however, because unlike the NASD, the Association is an entity created by statute.