**Dr. Frank A. UBEL, M.D., and Dr. Howard Anderson, M.D., each individually and as members of a class of persons similarly situated, plaintiffs/class representatives, petitioners, Appellants,**

v.

**STATE of Minnesota, et al., Respondents.**

No. C7–94–300.

Supreme Court of Minnesota.

May 9, 1996.

Rehearing Denied July 29, 1996.

Lommen, Nelson, Cole & Stageberg, P.A., Kay Nord Hunt, Phillip A. Cole, Terrance W. Moore, Minneapolis, for appellants.

Hubert H. Humphrey, III, Atty. Gen., Alison E. Colton, Asst. Atty. Gen., St. Paul, for respondents.

## OPINION

COYNE, Justice.

In this class action physicians whose licenses to practice medicine were initially issued or were renewed between April 1, 1992 and September 30, 1992, challenge the assessment of a $400 license surcharge payable on or before December 15, 1992 pursuant to Minn.Stat. § 147.01, subd. 6 (1992). The district court ruled that the statute was ambiguous and that on the basis of legislative history and a 1993 "clarifying" amendment the assessment was a proper application of the statute. On appeal from summary judgment in favor of the defendants—the State of Minnesota, Minnesota Board of Medical Practice and Minnesota Department of Human Services—the court of appeals affirmed, concluding that the statute as originally enacted plainly and unequivocally imposed the license surcharge against the members of the plaintiff class. We affirm.

The statutory subdivision in question, Minn.Stat. § 147.01, subd. 6 (1992), is set out below in its entirety:

Subd. 6. License surcharge. In addition to any fee established under section 214.06, the board shall assess an annual license surcharge of $400 against each physician licensed under this chapter as follows:

(1) a physician whose license is issued or renewed between April 1 and September 30 shall be billed on or before November 15, and the physician must pay the surcharge by December 15; and

(2) a physician whose license is issued or renewed between October 1 and March 31 shall be billed on or before May 15, and the physician must pay the surcharge by June 15.

The board shall provide that the surcharge payment must be remitted to the commissioner of human services to be deposited in the general fund under section 256.9656. The board shall not renew the license of a physician who has not paid the surcharge required under this section. The board shall promptly provide to the commissioner of human services upon request information available to the board and specifically required by the commissioner to operate the provider surcharge program. The board shall limit the surcharge to physicians residing in Minnesota and the states contiguous to Minnesota upon notification from the commissioner of human services that the federal government has approved a waiver to allow the surcharge to be applied in that manner.

This subdivision was enacted on April 29, 1992. By 1992 Minn. Laws, ch. 513, art. 7, § 137, the legislature set the date on which the statute became effective at a date 5 months later, on October 1, 1992. Act of Apr. 29, 1992, ch. 513, art. 7, § 137, 1992 Minn. Laws 835, 1086.

The district court considered the statute ambiguous and looked to legislative history for resolution of the question whether the plaintiffs, whose medical licenses were initially issued or renewed between April 1, 1992 and September 30, 1992, were liable for a surcharge payable by December 15, 1992. Concluding that the amount of money the legislature expected to raise by June 30, 1993 could be derived from physician license surcharges only if the surcharge were assessed against physicians whose licenses were issued between April 1, 1992 and September 30, 1992, the district court ruled that the plaintiff physicians must pay the surcharge on their 1992 licenses. Because the failure to pay the 1992 surcharge was not grounds for revocation of the license issued prior to the effective date of the statute but only precluded issuance of a license in 1993 and thereafter, the district court declared application of

the statute to the plaintiff class was not retroactive application.

The ambiguity which precipitated the district court's recourse to legislative history lies, however, not in the language of section 147.01, subd. 6 (1992) but is introduced by the language which the State and the other defendants add in order to justify their construction and application of the statute. The defendants contend that the 1992 version of the statute imposes a license surcharge "on physicians whose licenses to practice medicine were issued or renewed between April 1 and September 30, 1992 and who held active licenses on October 1, 1992." But, of course, that is not what the statute provides, and if a review of the statute is confined to the words of the statute enacted on April 29, 1992, the statutory mandate is readily apparent. The statute directs the Board of Medical Practice to assess an annual license surcharge of $400 in addition to the license fee the Board assesses pursuant to the authorization provided by Minn.Stat. § 214.06 (1992). The Board is also required to bill on or before November 15 physicians whose licenses are issued or renewed between April 1 and September 30 and to instruct them to remit the surcharge to the commissioner of human services on or before December 15. The Board is further directed to bill on or before May 15 physicians whose licenses are issued on or renewed between October 1 and March 31 with the instruction that the surcharge is to be remitted to the commissioner of human services by June 15.

■ A "surcharge" is an additional or extra charge which is sometimes defined as an excessive price. Here the $400 license surcharge is assessed "in addition to any fee" the Board is authorized to impose by reason of the issuance or renewal of a license to practice medicine. It is the issuance or annual renewal of the license which precipitates both the imposition of the fee authorized by section 214.06 and the surcharge assessed "in addition to" the section 214.06 fee. The fee fixed by the Board pursuant to section 214.06 is, of course, payable to the Board at the time the license is issued or renewed. Although the surcharge is assessed and the obligation to pay the surcharge comes into

existence when the license is issued or renewed, the surcharge is not then payable. If the license is issued or renewed between April 1 and September 30, the due date for payment of the license surcharge is December 15, and if the license is issued or renewed between October 1 and March 31, the license surcharge is payable on June 15, just before the end of the State's fiscal year. Unlike the license fee paid to the Board, which is credited to the special revenue fund, the license surcharge must be paid to the commissioner of human services for deposit in the general fund pursuant to Minn.Stat. § 256.9656 (1994). Hence, the commissioner need anticipate receipt of license surcharge payments only twice each fiscal year with about half of them arriving on or about December 15 and the remainder of them being received on or about June 15.

It must also be noted that the Board is required to "assess" an annual license surcharge "in addition to any fee established under section 214.06"—a process which takes place on issuance or renewal of the license. According to the mandate of section 147.01, subd. 6, the surcharge on any license issued between April 1 and September 30 is simply to be "billed"—not "assessed"—on or before November 15, and the surcharge on a license issued or renewed between October 1 and March 31 is to be "billed"—not "assessed"— on or before May 15. Thus, the obligation to pay the surcharge is fixed when the license is issued or renewed on a date between April 1 and September 30, but the bill for the surcharge is not presented until November 15 and payment is not due until December 15. The arrangement is not unlike that provided by the furniture store that advertises "Buy now; pay later." Most assuredly, it is the physician holding the license who is billed and who must pay the surcharge, but the license is hostage for the payment: if the surcharge is not paid, the Board is forbidden to renew the license even though the physician is otherwise fully qualified.

■ The language and structure of Minn.Stat. § 147.01, subd. 6 (1992), convince us that the plaintiff class of physicians is liable for the surcharge with respect to licenses issued between April 1, 1992 and September 30, 1992 only if the 1992 statute is given retrospective effect. Generally, of course, a statute is presumed to operate only prospectively. Only if Congress or the legislature clearly prescribes retroactive application will a statute be permitted to operate retroactively. *E.g., Landgraf v. USI Film Products*, 511 U.S. 244, ——, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229 (1994); *Baertsch v. Minnesota Dep't of Revenue*, 518 N.W.2d 21, 24 (Minn.1994). Moreover, Minn.Stat. § 645.21 (1994) codifies the presumption against retroactivity:

> No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature.

Subdivision 6 of section 147.01 was enacted on April 29, 1992. Had the legislature made the statute effective on the day of enactment, the surcharge could have been properly assessed with respect to all licenses issued or renewed between April 29, 1992 and September 30, 1992, and if the legislature had considered it important to assess a surcharge with respect to licenses issued or renewed during the first 28 days of April 1992, it could have declared the statute to be effective retroactively to April 1, 1992. But the legislature did neither of these things. Instead, it declared October 1, 1992, a date more than 5 months in the future, to be the effective date. Whatever may have been the legislature's unarticulated intention, there is no basis for giving the statute retroactive application.

■ While cross-motions for summary judgment were pending before the Hennepin County District Court, the legislature, in special session, enacted the Omnibus Health and Human Services Act. Included in that act was the following amendment to Minn.Stat. § 147.01, subd. 6 (1992):

> Sec. 6. Minnesota Statutes 1992, section 147.01, subdivision 6, is amended to read:
>
> Subd. 6. [LICENSE SURCHARGE.] In addition to any fee established under section 214.06, the board shall assess an annual license surcharge of $400 against each physician licensed under this chapter. *The surcharge applies to a physician who is licensed as of or after the effective date of this section in Laws 1992, and whose*

*license is issued or renewed on or after April 1, 1992, and is assessed as follows:*

\* \* \* \* \* \*

Act of May 27, 1993, ch. 1, art. 5, § 6, 1 Sp.1993 Minn. Laws 3019, 3137. The remainder of subdivision 6 was unchanged, but other sections of the 1993 enactment purported to cast the amendment as a clarification and to give the amendment special retroactive effect:

Sec. 129 [LEGISLATIVE INTENT.] *Section 6 \* \* \* [is] intended to clarify, rather than to change, the original intent of the statutes amended.*

Sec. 135 [EFFECTIVE DATES.] *Subd. 7. Sections 6 and 129 are effective the day following final enactment and apply to cases pending or brought on or after their effective date.*

*Id.* §§ 129, 135.

■ We have, on at least two occasions, pointed out that we are not bound by the legislature's characterization of an amendment as a "clarification." *Honeywell v. Minnesota Life & Health Ins. Guaranty Assoc.,* 518 N.W.2d 557, 562 (Minn.1994); *Rural American Bank of Greenwald v. Herickhoff,* 485 N.W.2d 702, 709 (Minn.1992) (Simonett, J., concurring specially). To simply adopt the legislature's "clarification" would constitute an abandonment of our duty to interpret and apply the law. Moreover, the 1993 legislature is not the interpreter of laws enacted by a prior legislature. *See Anderson v. Firle,* 174 Minn. 333, 337, 219 N.W. 284, 285 (1928).

Here, clarification of a statute which we regard as clear and unambiguous is inappropriate. Indeed, the 1993 amendment does not clarify the subdivision enacted in 1992; rather, that amendment modifies the substance of the 1992 law—the 1993 amendment changes the very nature of the exaction. Whether that metamorphosis occurred by design or by happenstance is not apparent, but despite the continued designation of the required $400 payment as a "license surcharge," the 1993 amendment imposes a tax based on status—a "provider's tax"—not a license surcharge. The 1992 statute imposed a surcharge on the license to practice medi-

cine, and assessment was triggered by issuance or renewal of the license. Although payment was not due until either June 15 or December 15, the debt came into existence on issuance or renewal of the license. The 1993 amendment, on the other hand, imposes an annual surcharge on the physician by reason of the physician's status as holder on or at any time after October 1, 1992 of a license to practice medicine, provided the license was issued or renewed on or after April 1, 1992, but that surcharge is not levied and does not become a debt until November 15.

■ Included in the 1993 statute is a provision which sets the date following final enactment—May 28, 1993—as the effective date and also provides that the 1993 act applies to cases pending or brought on or after the effective date. Despite the presumption against retroactivity, a doctrine deeply rooted in our jurisprudence because considerations of fairness demand that individuals should have an opportunity to know what the law is before they act, the legislature could have provided that the 1993 amendment was to have retroactive application and that the effective date of the 1993 amendment should be October 1, 1992. Although the retroactive application of a statute creating a new tax was once considered unconstitutional, *e.g., Nichols v. Coolidge,* 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184 (1927); *Blodgett v. Holden,* 275 U.S. 142, 48 S.Ct. 105, 72 L.Ed. 206 (1927), today's constitutional impediments to retroactive civil legislation are, as the United States Supreme Court puts it, "now modest." *Landgraf v. USI Film Products,* 511 U.S. 244, ——, 114 S.Ct. 1483, 1501, 128 L.Ed.2d 229 (1994). Consequently, had the legislature elected to set an effective date retroactive to October 1, 1992, such a forthright statement of limited retroactivity would almost certainly have forestalled any serious challenge of the constitutionality of a $400 assessment against physicians who, on October 1, 1992, held a medical license which was issued on or after April 1, 1992.

The provisions of the 1993 statute, including the provision setting an effective date, and the circumstances of its enactment call to

mind a tax statute adopted by the Wisconsin Legislature in 1935. Act of March 27, 1935, ch. 15, 1935 Wisc. Laws 19. When it convened in January 1935, in the depths of the Great Depression, the Wisconsin Legislature was confronted by a fiscal emergency—a shortfall in the revenue required to meet the state's obligations. In order to meet the revenue demand the legislature adopted a statute which was effective March 27, 1935 and which imposed a tax on dividend income received in 1933 and 1934. The due dates for filing tax returns and for the payment of the tax attributable to both 1933 and 1934 preceded the effective date of the statute, and at the times the dividends were received and the 1933 and 1934 returns filed, the dividends were not taxable. Despite the legislature's designation of March 27, 1935 as the effective date of the statute, the United States Supreme Court simply recognized the statute as imposing a retroactive tax and treated the statute as having retrospective application. *Welch v. Henry*, 305 U.S. 134, 144, 153, 59 S.Ct. 121, 124, 83 L.Ed. 87 (1938).

Like the 1935 Wisconsin statute which in 1935 imposed a tax on dividends received in 1933, the statute with which we are here concerned, adopted on May 27, 1993, imposes a tax on physicians who, on October 1, 1992 held a license to practice medicine that had been issued or renewed on or after April 1, 1992. In both cases the taxable event—the receipt of dividends in the Wisconsin case and the possession on October 1, 1992 of a medical license issued or renewed on or after April 1, 1992 in the Minnesota case—antedated the statute. Like the United States Supreme Court in the *Welch* case, we recognize that, despite the legislature's designation of May 28, 1993 as the effective date of the 1993 act, the language of the statute—namely, the incorporation for the first time of the specific day and year on which the initial taxable event occurs—compels retrospective application.[1]

Because the defendants have, ever since the effective date of the 1992 statute, relied on legislative history to justify their applica-

tion of that statute, the record before us includes information about the circumstances which prompted its enactment.

In 1991, the legislature imposed health care provider surcharges on licensed nursing homes, hospitals, and health maintenance organizations. Minn.Stat. § 256.9657 (Supp. 1991). In the fall of 1991 Congress changed the federal law governing provider taxes and required states with fiscal years beginning on or before July 1, like Minnesota, to comply with the new law by October 1, 1992. 42 U.S.C. § 1396b(w)(1)(F) (1994). That the legislature attempted to bring Minnesota into timely compliance is indicated by its amendment of Minn.Stat. § 256.9657 (1992), particularly by the addition of subdivision 8 of section 256.9657, and by the enactment of Minn.Stat. § 147.01, subd. 6 (1992). As a part of the same bill, the rate of payment to physicians for medical services rendered on or after October 1, 1992, pursuant to the program of medical assistance was increased.

By the time the parties had submitted cross-motions for summary judgment in the spring of 1993, the legislature apparently recognized that it had made a mistake—that section 147.01, subdivision 6, did not require physicians whose licenses to practice medicine were issued or renewed between April 1 and September 30 to pay a surcharge until December 15, 1993. The legislature obviously hastened to correct its mistake, for the 1993 amendment was enacted by May 27, 1993. With its customary 20/20 clarity, hindsight suggests that it would have been preferable for the legislature to acknowledge its mistake and set the effective date as if it had been contained in the original enactment. *E.g., United States v. Carlton,* —— U.S. ——, ——, 114 S.Ct. 2018, 2023, 129 L.Ed.2d 22 (1994). Instead, the legislature characterized the 1993 amendment as a "clarification" and declared the day following the final enactment to be the effective date, limiting retroactive application only to cases pending or brought on or after the effective date. The plaintiff class assures us that theirs is the only case pending on the effective date of the

---

1. We also recognize that the legislature's characterization of the 1993 amendment as a "clarification" may have been intended to cause the court to accord the amendment retrospective application regardless of the legislature's gesture toward prospective application.

1993 amendment, an assertion with which the defendants do not quarrel. Limiting retroactive application of a tax statute to a single case smacks of special legislation of the kind prohibited by Art. XII, § 1 of the Minnesota Constitution. Moreover, the direction for retroactive application of a tax statute limited to pending cases treads dangerously close to the line separating the power of the judiciary from that of the legislature if it does not in fact cross it.

Furthermore, the 1993 amendment was adopted after the parties had interposed cross-motions for summary judgment. The State of Minnesota, one of its agencies and one of its boards are the defendants in this action. For the State, a party, to change the substantive law governing disposition of the action in a manner designed to assure an outcome favorable to the State and to make that change applicable retroactively only to the pending action or an action subsequently brought may well violate due process, for it suggests that the legislature acted with an improper motive—targeting the plaintiffs because they objected to the unlawful exaction of a surcharge.

I do not understand the dissent's charge that there is no basis for giving the statute retroactive effect. I have merely tried to explain that by its own terms the 1993 amendment necessarily requires retrospective application—that is, it imposes a retroactive tax—a tax based on an event which occurred before enactment of the amendment. As for the attempt at section 135 of the session law (1 Sp.1993 Minn. Laws, ch. 1, art. 5, § 135) amending Minn.Stat. § 147.01, subd. 6 to set the effective date and application of the amendment, no one has ever suggested that the United States Supreme Court rewrote the Wisconsin tax law when it snubbed the Wisconsin legislature's designated effective date and simply recognized the statute as imposing a retroactive tax. In any event 1 Sp. Minn. Laws, ch. 1, art. 5, § 135 is not only uncodified but is patently severable from Minn.Stat. § 147.01, subd. 6 as amended in 1993.

Because the amended statute, by its terms, imposes a retroactive $400 surcharge against each physician in the plaintiff class—*i.e.,*

each physician who held on or after October 1, 1992 a license to practice medicine issued or renewed on or after April 1, 1992—we affirm the decision of the court of appeals, albeit for different reasons.

As the United States Supreme Court explained in *Landgraf v. USI Film Products,* —— U.S. ——, ——, 114 S.Ct. 1483, 1498, 128 L.Ed.2d 229 (1994):

> Retroactivity provisions often serve entirely benign and legitimate purposes, whether to respond to emergencies [or] to correct mistakes * * *. However, a requirement that [the legislature] first make its intention clear helps ensure that [the legislature] itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness.

The imposition of the annual medical license surcharge in response to 1991 changes in federal legislation governing state eligibility for federal funding of a portion of Medicaid (called Medical Assistance in Minnesota) was, we believe, one of those rare laws whose retroactive operation serves a benign and legitimate purpose.

Affirmed.

TOMLJANOVICH, Justice (concurring):

I concur only in the result of the majority.

It seems to me that as enacted, Minn.Stat. § 147.01, subd. 6 (1992) is ambiguous. A statute is ambiguous if it is susceptible to more than one reasonable interpretation. *Glen Paul Court Neighborhood Ass'n v. Paster,* 437 N.W.2d 52, 56 (Minn.1989). Though enacted on April 29, 1992, it was not made effective until October 1, 1992. From this it is reasonable to conclude that the class of physicians whose licenses were issued or renewed between April 1 and September 30, 1992 would not be required to pay the surcharge in 1992. Instead, the first payment due would be from the class of physicians whose licenses were issued or renewed between October 1 and March 31 of 1992–93.

On the other hand, the billing for the surcharge is not required to be completed until November 15 and payment is not due until December 15. This leaves two and a half months subsequent to the statute's effec-

tive date in which physicians whose licenses were issued or renewed before October 1, 1992 could pay the surcharge. From this it is reasonable to conclude that the legislature intended this group of physicians to pay the surcharge. Thus, I would find section 147.01, subd. 6 ambiguous.

Where the intention of the legislature is clearly manifested by plain unambiguous language, no construction is necessary or permitted. *Lenz v. Coon Creek Watershed Dist.,* 278 Minn. 1, 9, 153 N.W.2d 209, 216 (1967). However, if a statute is ambiguous, a court may refer to the legislative history surrounding the statute's enactment to ascertain its legislative intent. Minn.Stat. § 645.16(7) (1994).

Legislative history indicates the legislature anticipated that the annual surcharge would generate approximately $4.362 million in revenues for fiscal year 1993.[1] Respondents point out that the only way the state could generate this amount of revenue for fiscal 1993 would be to surcharge both groups— approximately 11,000 physicians in all. Thus, the legislature must have intended to surcharge the group of physicians whose licenses were issued or renewed prior to October 1, 1992.

Having found that section 147.01, subd. 6 applies to appellants, I would further find that it does not do so retroactively. "A retrospective law, in the legal sense, is one which takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability, in respect of transactions or considerations already past." *Cooper v. Watson,* 290 Minn. 362, 369, 187 N.W.2d 689, 693 (1971)(quoting 50 Am.Jur., Statutes, § 476). I would read section 147.01, subd. 6(1), requiring physicians whose licenses were renewed or issued between April 1 and October 30 of 1992 to be billed for the surcharge by November 15 of 1992, as an administrative provision bearing on the order of payment of a financial obligation. In other words, that a physician's license was

issued or renewed between April 1 and September 31 of 1992 is simply an "antecedent" fact which the section draws upon for its operation. Such antecedent facts do not render a statute retroactive. *Reynolds v. United States,* 292 U.S. 443, 449, 54 S.Ct. 800, 803, 78 L.Ed. 1353 (1934).

Indeed, to the extent that the payment of the surcharge is associated at all with the issuance or renewal of a license, the statute provides that a license will not be renewed if the surcharge is not paid. Thus, because the 1992 licenses had already been renewed, it was the 1993 licenses that would be affected. It was made clear during oral argument that the licenses issued or renewed between April 1 and September 31, 1992 would not be affected in any way by nonpayment of the surcharge. Thus, section 147.01, subd. 6 impairs no "vested right" and does not operate retroactively.

I would also find that the statute violates no due process rights. An individual's procedural due process rights are violated by a statute only if it divests or affects a private vested interest. *Smith v. City of Owatonna,* 450 N.W.2d 309, 311 (Minn.1990). As discussed above, section 147.01, subd. 6 has no effect on a physician's current license. Rather, the statute affects renewal of a license. However, I would find an expectation in the renewal of a license not to be a vested property interest. Thus, operation of the statute would not violate due process.

Appellants also argue that the surcharge violates constitutional state and federal equal protection guarantees. Equal protection challenges to legislation which makes classifications based on social or economic criteria are examined under a rational basis standard. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *see also Skeen v. State,* 505 N.W.2d 299, 316 (Minn.1993). Legislative classifications will be upheld if: 1) the challenged legislation has a legitimate purpose; and 2) it was reasonable for the legislature to believe that the use of the

1. This information is based on a document that was made available to the Senate Subconference Committee on Health and Human Services. The document entitled "Provider Specific Surcharge FY 93," was attached to the affidavit of David Giel, a legislative analyst with the Minnesota Senate Counsel and Research Office.

challenged classification would promote that purpose. *Id.* Appellants do not contend the state's interest—raising money for the general fund—is not legitimate. Rather, appellants contend no rational basis exists for dividing the physicians into two classes and then applying this statute against physicians born between April 1 and September 30. Of this argument, the court of appeals said:

> The purpose of the surcharge is to generate funds to attract federal matching funds for Medicaid. The surcharge is assessed on all physicians. The division of Minnesota physicians into two groups for administrative convenience in billing is rationally related to a legitimate state interest.

*Ubel v. State,* No. C7-94-300, 1994 WL 284973, unpub. op. at 2 (Minn.App. June 28, 1994). I find this reasoning sound and would hold that appellants' rights to equal protection under both the state and federal constitutions are not violated.

I would affirm the court of appeals' holding that appellants owed the State Board of Medical Practice the $400 license surcharge on December 15, 1992 as required by section 147.01, subd. 6 (1992).

STRINGER, Justice (concurring).

I join in the concurrence of Justice Tomljanovich.

PAGE, Justice (dissenting).

I respectfully dissent, yet I agree with much of the reasoning of the majority opinion. I agree that Minn.Stat. § 147.01, subd. 6 (1992) is clear and unambiguous, that the plaintiff class of physicians is liable for the surcharge in 1992 only if the statute is given retroactive effect, and that there is no basis for giving the statute retroactive effect. I further agree that the 1993 amendment, which modifies the substance of the 1992 law and limits retroactive application to pending cases, is suggestive of special legislation that improperly targets the plaintiff class for challenging the State's unlawful exaction of a surcharge. Thus, I would not impute a benign and legitimate purpose to the law.

GARDEBRING, Justice (dissenting).

I join in the dissent of Justice Page.

ANDERSON, Justice (dissenting).

I join in the dissent of Justice Page.