**STATE of Minnesota, Respondent,**

v.

**Donte Demarco WHITE, Appellant.**

No. A08–0012.

Court of Appeals of Minnesota.

Jan. 27, 2009.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hen-

nepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, MN, for respondent.

Eric L. Newmark, Birrell & Newmark, Minneapolis, MN, for appellant.

Considered and decided by SCHELLHAS, Presiding Judge; JOHNSON, Judge; and CRIPPEN, Judge.*

**OPINION**

SCHELLHAS, Judge.

Appellant challenges the district court's pretrial order denying his motion to suppress evidence obtained as a result of a traffic stop. Appellant argues that the district court incorrectly interpreted Minn. Stat. § 169.79, subd. 7, to prohibit the use of any license plate cover, and that under a correct interpretation of the statute, his license plate cover did not violate the statute so as to justify the traffic stop. Because we conclude that the district court correctly interpreted the statute, we affirm.

**FACTS**

Bloomington Police Officer Cullan McHarg stopped appellant Donte Demarco White at night, when he saw a glare from a vehicle license plate and observed that the vehicle had a clear license plate cover. Officer McHarg first testified that the cover affected the plate's visibility or reflectivity, but later testified that he could not recall if the plate's visibility or reflectivity was affected. He also testified that he could not recall if he was able to read the license plate and that uncovered license plates can also create glare. After the stop, a weapon was found in the vehicle.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

Appellant was arrested and charged with carrying a weapon without a permit in violation of Minn.Stat. § 624.714, subd. 1(a) (2006).

The district court concluded that Minn. Stat. § 169.79, subd. 7, prohibits the use of *any* covering over assigned letters, numbers, or the state of origin, and that the traffic stop was lawful based on an equipment violation. After the district court denied appellant's suppression motion, appellant preserved the suppression issue for appeal, waived his right to a jury trial, and proceeded with a stipulated-facts trial. The court convicted appellant of the weapons offense. This appeal follows.

## ISSUE

Did the district court correctly interpret Minn.Stat. § 169.79, subd. 7, to prohibit covering letters, numbers, or the state of origin on a license plate with any material, regardless of whether the material affects the license plate's visibility or reflectivity?

## ANALYSIS

Appellant argues that the district court erred by interpreting Minn.Stat. § 167.79, subd. 7, to ban all license plate covers. Appellant argues that the plain language of the statute allows clear covers that do not affect the license plate's visibility or reflectivity and that the district court's interpretation nullifies the effect of part of the statute. Appellant argues that the stop was not justified by an equipment violation and that the officer's mistaken interpretation of the law cannot justify the stop.

Statutory interpretation is reviewed de novo. *Jacobson v. $55,900 in U.S. Currency,* 728 N.W.2d 510, 519 (Minn.2007).

The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Every law shall be construed, if possible, to give effect to all its provisions. When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.

Minn.Stat. § 645.16 (2006). "When the words of a law are not explicit," courts may use a number of factors listed in the statute to ascertain intent. *Id.* These factors include, among other things, the "occasion and necessity for the law" and the law's legislative history. *Id.* But these factors are only to be used if the statute's terms are ambiguous. *Id.* "A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn. 2000) (quotation omitted). Finally, "[a] statute should be interpreted, whenever possible, to give effect to all of its provisions; no word, phrase, or sentence should be deemed superfluous, void, or insignificant." *Id.* (quotation omitted).

The relevant portion of Minn.Stat. § 169.79, subd. 7, reads: "It is unlawful to cover any assigned letters and numbers or the name of the state of origin of a license plate with any material whatever, including any clear or colorless material that affects the plate's visibility or reflectivity." We conclude this language is ambiguous because it is subject to more than one reasonable interpretation. The statute can be reasonably interpreted to mean that covering critical information on a license plate with "any material" is unlawful, and it can be reasonably interpreted to mean that covering critical information on a license plate with a clear covering is unlawful only if the clear covering affects "the plate's visibility or reflectivity." Because the statute is ambiguous, we consider the legislative history to ascertain the legislative intent.

Section 169.79, subd. 7, was added in 1995. 1995 Minn. Laws ch. 120, § 4, at 262. Before the 1995 addition, the statute read: "All plates shall be securely fastened so as to prevent them from swinging. The person driving the motor vehicle shall keep the plate legible and unobstructed and free from grease, dust, or other blurring material so that the lettering is plainly visible at all times." Minn.Stat. § 169.79 (1994).

The 1995 amendment added: "It is unlawful to cover any assigned letters and numbers or the name of the state of origin of a license plate with any material whatever, including any clear or colorless material that affects the plate's visibility or reflectivity." 1995 Minn. Laws ch. 120, § 4, at 262. The amendment originated in a bill that was explained at House and Senate committee meetings by Major Glenn Gramse of the Department of Public Safety, Highway Patrol Division. Hearing on H.F. No. 383 Before the House Comm. on Transp. and Transit (Feb. 10, 1995); Hearing on H.F. No. 383 Before the Senate Comm. on Transp. and Pub. Transit (Mar. 1, 1995). The amendment was offered as a "housekeeping bill" for purposes of clarifying the existing statute. Hearing on H.F. No. 383 Before the House Comm. on Transp. and Transit (Feb. 10, 1995). Gramse explained that to have an obscured license plate already was a violation of Minnesota law, and said:

> We are trying to strengthen that by again being clear that you can't cover the license plate with any kind of material that either darkens or reduces the reflective value of the license plate which then impairs the ability of not only police to see it but of citizens to report crimes....

*Id.* An unidentified person asked Gramse at the committee meeting: "I might have seen somewhere a license plate cover that was blue ... does that fall into your category of obscuring, plastic blue?" *Id.* Gramse answered, "Yes, it would" and explained:

> Again, we spend extra money to make sure that the plates are made of reflective material and when you put even that kind of a covering over it you get a reflection back from the license plates, which really destroys the reflective ability of the license plate to do the job that it was intended to do, so yes it would be covered under the statute.

Gramse continued:

> I believe it is already a violation to have your license plate obscured with that blue covering under the general prohibition about having plates obscured.

*Id.* An unidentified person said: "I think under this bill, and probably it was before even—that you can't even have clear covering over the top of the license plates so, which, uh, Mr. Gramse has stated, that causes the reflective material not to work." *Id.*

Gramse also testified before the Senate Transportation and Public Transit Committee. A full recording of the Senate Committee hearing is not available, but in the available portion Gramse explained the bill again as follows:

> It does not create new violations. These are things that are already in the statute. It merely clarifies them to make it clearer to both the public and to the law enforcement officials that they are in fact violations.

Hearing on H.F. No. 383 Before the Senate Comm. on Transp. and Pub. Transit (Mar. 1, 1995). Gramse was asked: "This language says that those clear plastic covers that are on license plates that sometimes reflect and you can't read the license plate—they are no longer allowable?" *Id.* Gramse answered:

That is correct. Under another section of the statute it says that license plates must be legible and cannot be obscured or obstructed. Our contention is that when you put that on there and it reflects back it already is obscuring the license plate, but this just makes it clear that that is also included.

*Id.* Gramse continued:

The law says you can't obscure the license plate or you can't make it illegible, which, in effect, that is what happens when you put those on. So we just want it very clear that people know in the statute, if they look, that they don't have to try to think "does this make my license plate illegible" when, in fact, that is what it does, if you, just kind of clarifies that you can't put those things on.

*Id.* The senate committee meeting tapes cut off after this testimony. *Id.*

The testimony repeatedly emphasizes that the 1995 amendment was meant to clarify existing law, not change it. The legislative history reveals that the legislature was concerned that even clear coverings can obscure plates by causing a reflection or by affecting the license plate's reflectivity. The legislature's intent to clarify the statute suggests that the language in the amendment, "including any clear or colorless material that affects the plate's visibility or reflectivity," was included to clarify that clear coverings are prohibited; the amendment was not included to limit the legislative prohibition against covering critical information on a license plate with "any material whatever."

Further, "[w]hen 'include' is utilized, it is generally improper to conclude that entities not specifically enumerated are excluded." 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 47.23, at 417 (7th ed.2007). This court has concluded on at least two occasions that the use of the word "including" is illustrative rather than exclusive. In *Reserve Mining Co. v. Vanderveer,* we examined an unemployment-compensation statute that stated that a person was not eligible to receive benefits for any week in which he received "vacation allowance paid directly by the employer for a period of requested vacation, *including* vacation periods assigned by the employer under the provisions of a collective bargaining agreement, or uniform vacation shutdown." 368 N.W.2d 361, 363 (Minn.App.1985) (emphasis added) (quoting Minn.Stat. § 268.08, subd. 3(2) (1982)). We explained that the phrase, "including vacation periods assigned by the employer under the provisions of a collective bargaining agreement," was "merely illustrative" of what was intended by the phrase, "requested vacation," and concluded that receipt of vacation benefits assigned under authority other than a collective-bargaining agreement resulted in ineligibility for benefits. *Id.* (quoting Minn.Stat. § 268.08, subd. 3(2)). Similarly, in *In re Paternity of B.J.H.,* we explained that where a statute defines a child's best interests as "all relevant factors," including factors listed in the statute, the use of the term "including" meant that "all relevant factors" were not limited to those identified in the statute. 573 N.W.2d 99, 102 (Minn.App.1998).

Following the reasoning of our prior decisions, we conclude that the legislature intended to prohibit the covering of critical information on a license plate with "any material whatever," including a clear or colorless covering. The subordinate phrase, "including any clear or colorless material that affects the plate's visibility or reflectivity," is illustrative of a type of covering that is prohibited and does not mean that other types of clear or colorless covering are permissible. We recognize that our interpretation of Minn.Stat.

§ 169.79, subd. 7, may appear to give no effect to the subordinate phrase in the statute, "including any clear or colorless material that affects the plate's visibility or reflectivity," *see* Minn.Stat. § 645.16 ("Every law shall be construed, if possible, to give effect to all of its provisions."), but because the language in the subordinate phrase is explanatory only, our statutory interpretation does not nullify the effect of or treat the language in the subordinate phrase as surplusage.

Finally, because the statute prohibits covering assigned letters, numbers, and the state of origin with "any material," and appellant used a clear covering over this critical information, we conclude the traffic stop was justified because of the equipment violation. *See State v. Johnson,* 713 N.W.2d 64, 67 (Minn.App.2006) (concluding that equipment violation provided reasonable, articulable suspicion to justify a traffic stop).

## DECISION

The district court correctly concluded that the stop of appellant was justified by an equipment violation in the form of appellant's clear license plate cover. Under Minn.Stat. § 169.79, subd. 7 (2006), it is illegal to cover assigned letters, numbers, and a state of origin on a license plate with any material whatever.

**Affirmed.**

JOHNSON, Judge (concurring specially).

I concur in the opinion of the court except insofar as it reasons that the statute is ambiguous. In my view, the statute is unambiguous. The third sentence plainly states that a person may not cover the pertinent parts of a license plate "with any material whatever." This language is absolute and does not admit exceptions. "The word 'any' is given broad application in statutes, regardless of whether we consider the result reasonable." *Hyatt v. Anoka Police Dep't,* 691 N.W.2d 824, 826 (Minn.2005) (applying plain meaning of phrase "any person" in Minn.Stat. § 347.22 (2004)); *see also In re PERA Police & Fire Plan Line of Duty Disability Benefits of Brittain,* 724 N.W.2d 512, 519 (Minn.2006) (holding that phrase "any act of duty" in Minn.Stat. § 353.656, subd. 1 (2004), is unambiguous); *Olson v. Ford Motor Co.,* 558 N.W.2d 491, 494 (Minn.1997) (interpreting phrase "any litigation … resulting from the use or operation of any motor vehicle" in Minn.Stat. § 169.685, subd. 4 (1996), by "look[ing] no further than the express language of the statute"). The final clause, which begins with the word "including," cannot reasonably be interpreted to *exclude* anything from the category of prohibited materials because the clause merely provides examples of prohibited materials. Furthermore, the statute cannot be deemed ambiguous by suggesting an alternative interpretation that is contrary to the statute's plain meaning. *See Ubel v. State,* 547 N.W.2d 366, 368 (Minn. 1996). Because the statute is unambiguous, we should not refer to or rely on its legislative history. *See Breza v. City of Minnetrista,* 725 N.W.2d 106, 114 n. 13 (Minn.2006). With these qualifications, I join in the opinion of the court.