**MINNESOTA LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION, Relator,**

v.

**DEPARTMENT OF COMMERCE, Respondent.**

No. C5–86–1464.

Court of Appeals of Minnesota.

Feb. 17, 1987.

Frank J. Walz, Best & Flanagan, Minneapolis, for relator.

Hubert H. Humphrey III, Atty. Gen., Jerome L. Getz, Allen I. Gilbert, Sp. Asst. Attys. Gen., St. Paul, for respondent.

Christopher J. Dietzen, John E. Diehl, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for John Alden Life Ins. Co. and Sun Life Ins. Co. of America.

Timothy R. Thornton, Thomas J. Vollbrecht, Hart, Bruner, O'Brien & Thornton, Minneapolis, for IDS Life Ins. Co. and Midwest Life Ins. Co.

Department of Commerce, St. Paul, pro se.

Carl W. Cummins, Jr., Dorsey & Whitney, St. Paul, for Manufacturers Life Ins. Co.

Heard, considered, and decided by RANDALL, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

WOZNIAK, Judge.

The Minnesota Life and Health Insurance Guaranty Association appeals from a decision of the Commissioner of Commerce determining the assessment base for Association member insurers. The Association contends that the Commissioner erred in: (1) broadly defining annuity contract under Minn.Stat. § 61B.03, subd. 3 (1984); (2) determining unallocated annuities are contracts "supplemental to" annuity contracts under Minn.Stat. § 61B.02, subd. 1; and (3) ordering recalculation of the assessments of all Association member insurers. We affirm.

## FACTS

Appellant Minnesota Life and Health Insurance Guaranty Association (Association) is a nonprofit organization created under the Insurance Guaranty Association Act, Chapter 61B. All insurers in Minnesota dealing in life, health, and annuity contracts are Association members. The Act is designed to protect policyholders, insureds, beneficiaries, and others against insurance company failures. The Association was created to guarantee benefit payments and coverage continuation for Minnesota residents. Association members are assessed to make the payments to insureds. Assessments are limited to 2% yearly of an insurer's premiums covered by a particular account, such as an annuity account.

The Department of Commerce found that Minnesota's Insurance Guaranty Association Act, adopted in 1977, was patterned after a national Model Act. However, the Minnesota Act contains a definition of "annuity contracts," the major issue of this appeal, which is not contained in the Model Act.

This action stems from a recent assessment of Association insurers due to the bankruptcy of Baldwin-United and its subsidiaries, University Life Insurance Company of Indiana and National Investors Insurance Company of Arkansas. Cincinnati-based Baldwin-United filed for bankruptcy in 1983, shortly after its subsidiaries were placed into rehabilitation in their home states. Before Baldwin-United's failure, over 2,700 single premium deferred annuities (SPDAs) were purchased by Minnesota residents. Under an SPDA policy, the policyholder pays a lump sum to the company, which establishes an interest-earning account. At a fixed time, the policyholder may withdraw the accumulated funds or elect one of the contract's annuity payout options.

In November 1983, the Commissioner found that the companies were unable to meet their obligations to policyholders and were "impaired insurers" under the Act. In January 1984 the Commissioner sued the Association to force it to assess member insurers to cover payments due Minnesota policyholders. The parties entered into a stipulation in May 1985 to assume or guarantee the obligation of the two insurance subsidiaries under the SPDAs issued to Minnesota residents. The stipulation provides that on November 1, 1987, the Association will reimburse Minnesota residents the difference between whatever an insured had received with respect to the SPDA from whatever source, and the policy value of the SPDA on May 1, 1984.

To meet this obligation, the Association agreed to assess its members based on a percentage of the dollar amount of annuity contracts they write. The Association excluded certain types of annuity contracts from the assessment base, specifically those not issued to or owned by a named individual. The unallocated annuity contracts excluded by the Association include guaranteed investment contracts (GICs) and deposit administration contracts (DACs). GICs and DACs, issued primarily under pension fund and profit sharing plans, provide for payment of funds to the insurer by an employer or other policyholder at a specific interest rate for a fixed term. The policyholder cannot withdraw

the funds before the end of the term except to adjust for a prevailing interest rate change or to begin annuity payments for plan participants.

The Association determined that the definition of annuity in Minn.Stat. § 61B.03 put GICs and DACs outside the Act's coverage, thus removing them from the assessment base. Minnesota Statute Section 61B.03, subdivision 3 states:

> "Annuity contracts" means contracts subject to Chapter 61A wherein the policyowner agrees to make payments to the insurer at the beginning of the contract period and the insurer agrees to make payments thereafter to the insured for a specified period of time or until the insured's death.

The stipulation between the State and the Association requires a $6 million assessment from member insurers. The Association's board of directors' resolution sets the assessment base as:

> All premiums or considerations received by such members from the sale in Minnesota during the calendar year 1982 of annuity contract or annuity certificates, *except premiums or considerations arising from any annuity contract or any annuity certificate issued under a group annuity contract which was not issued to or owned by an individual,* except to the extent of any annuity benefits guaranteed to any such individual by the insurer under any such annuity contract or certificate.

(Emphasis added.)

After excluding GICs and DACs, the assessment was based on $389 million in premiums. If GICs and DACs were included in the base, an additional $252 million in annuity premiums would have been included, bringing the assessment base to $641 million. This dispute involves the question of whether the GICs and DACs should be included in the assessment base.

Respondent insurers appealed the assessment base to the Commissioner of Commerce, objecting to the exclusion of GICs and DACs. A contested case hearing was held before an administrative law judge (ALJ) whose proposed findings recommended that the Association reassess all member insurers and include unallocated annuities in the assessment base. The ALJ determined that exclusion of the unallocated annuities would deprive many Minnesota insureds of the Act's protection, while improperly reducing the assessment base. He noted that a major insolvency would substantially increase the time it would take to protect Minnesota consumers.

Both oral testimony and documentary evidence were presented at the administrative hearing. John Ingassia, supervisor of the life and health section of the Department of Commerce, testifying for informational purposes, said the department was taking a neutral position with respect to inclusion of DACs and GICs into the Act's coverage. He explained that unallocated annuities are regulated by the Commerce Department in the same manner as all other annuities and noted that GICs and DACs are not specifically excluded from the Act's coverage. He also pointed out that GIC contracts include an annuity option. Richard O'Brien, vice president and assistant general counsel for IDS Financial Services, testified that the board's narrow assessment base means that IDS bears a disproportionate share of the assessments. He claims that the Baldwin-United annuities sold to Minnesotans were basically GIC contracts and that GICs are considered annuities by the Internal Revenue Service and for general insurance law purposes.

Royce Sanner, Vice President and General Counsel for Northwestern National Life Insurance and a member of the Association's board of directors, explained that the distinction between covered and noncovered annuity contracts is the absence of the provision identifying the persons who would become annuitants in the noncovered contracts. He explained the board interpreted the statute to require narrow coverage in the belief that, "It's better to protect individual John Does than to protect large, sophisticated pension plan buyers." Sanner admitted that his company sells DACs

and GICs and that $32 million in premiums were excluded under the board's interpretation. He said nearly all other board members also benefit from this interpretation.

Sanner agrees that GICs and DACs are considered annuities under Minn.Stat. § 61A, but disputes whether they are annuities under Chapter 61B due to the definition of annuity contract contained in the Minnesota Act. Respondents claim there is no difference.

The Association disagreed with the ALJ's findings. In July 1986, the Commissioner's findings, conclusions and order determined ·that GICs and DACs and other unallocated annuity contracts are covered under the Act as contracts "supplemental to" annuity contracts or, alternatively, "annuity contracts." The order invalidated the Association's assessment and required a new assessment of all insurers. The Association then appealed by writ of certiorari.

### ISSUES

1. Did the Commissioner of Commerce err in determining GICs, DACs, and other unallocated annuities are covered policies under the Minnesota Insurance Guaranty Association Act?

2. Did the Commissioner err in determining GICs and DACs were "supplemental to" annuity contracts under Minn.Stat. § 61B.02, subd. 1?

3. Did the Commissioner err in ordering recalculation of the assessments of all member insurers?

### ANALYSIS

1. *Scope of Review*

Minnesota Statutes Sections 14.63–14.69 (1986) govern judicial review of an agency decision.

In a judicial review under sections 14.-63 to 14.68, the court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusions, or decisions are:

(a) In violation of constitutional provisions; or

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

Minn.Stat. § 14.69.

Agency decisions enjoy a presumption of correctness. *Crookston Cattle Co. v. Minnesota Department of Natural Resources,* 300 N.W.2d 769, 777 (Minn.1980). Courts should afford special deference to an agency's expertise, knowledge, education, and experience in the field of its technical training. *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824 (Minn.1977).

The agency's factual findings are to be reviewed under the substantial evidence test. *Peoples Natural Gas Co. v. Minnesota Public Utilities Commission,* 342 N.W.2d 348, 351 (Minn.Ct.App.1983), *pet. for rev. denied* (Minn. April 24, 1984). Substantial evidence is:

1. Such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;

2. More than a scintilla of evidence;

3. More than "some evidence";

4. More than "any evidence"; and

5. Evidence considered in its entirety.

*Reserve Mining Co.,* 256 N.W.2d at 825.

The reviewing court should use this test to evaluate the evidence considering the entire record, and affirm if the agency decision is lawful and reasonable. *See id.* at 826–27.

Here, the Association argues the Commissioner erroneously interpreted the Act by incorrectly defining "annuity contracts" and contracts "supplemental to" annuity contracts. The Association also claims the

Commissioner exceeded his authority under the Act by invalidating the assessment as applied to the 250 insurers who did not appeal.

■ 2. The Association contends the Commissioner erroneously determined that GICs and DACs are covered contracts pursuant to the definition of annuity contracts contained in Minn.Stat. § 61B.03, subd. 3. It argues that deference to agency expertise is inappropriate in a case of first impression such as this. On the other hand, respondents, John Alden Life Insurance and Sun Life, urge the court to accord even greater deference to the agency's decision.

In urging courts to defer to an agency's skill and technical expertise, this court stated:

> Where evidence is conflicting or more than one inference may be drawn from the evidence, findings of the hearing examiner must be upheld.

*In re Kern Grain Co.*, 369 N.W.2d 565, 569 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. August 29, 1985). We believe the principle is the same for matters not subject to prior judicial construction.

In a case of first impression involving interpretation of a statute subject to two reasonable interpretations, the supreme court noted:

> [A] statute is to be construed according to the legislative intent, which is to be sought in the language used, in light of the subject matter, the purpose of the statute, the occasion and necessity for the law, and the consequences of a particular interpretation.

*State v. Olson*, 325 N.W.2d 13, 19 (Minn. 1982) (quoting *Grudnosky v. Bislow*, 251 Minn. 496, 498, 88 N.W.2d 847, 850 (1958)). The legislature directed the provisions of the Insurance Guaranty Association Act apply to

> direct life insurance policies, health insurance policies, annuity contracts, and contracts supplemental to life and health insurance policies or annuity contracts, issued by persons authorized at any time to transact insurance in this state.

Minn.Stat. § 61B.02, subd. 1. The defined purpose of the Act is

> to protect policyowners, death benefit certificate holders, insureds, beneficiaries, annuitants, payees, and assignees of life insurance policies, health insurance policies, annuity contracts, and supplemental contracts * * *.

*Id.*, subd. 2. The legislature provided that the Act is to be liberally construed to meet its purposes and that the fundamental consumer protection policy shall aid in interpreting the Act. *Id.*, subd. 3. Therefore, we need not speculate about the Act's purpose. It is to protect the future financial stability of individuals.

The Insurance Guaranty Association Act is protective and remedial legislation. In general,

> a liberal construction is usually accorded statutes which are regarded by courts as humanitarian or which are grounded on a humane public policy. Where there are disqualifying provisions, the exceptions should be narrowly construed.

*Nordling v. Ford Motor Co.*, 231 Minn. 68, 76–77, 42 N.W.2d 576, 581–82 (1950) (citations omitted). Minnesota Statutes Section 61B.02, subdivision 1(a) through (e) identifies five types of policies which are excluded from coverage under the Act. Unallocated annuity policies such as GICs and DACs are not mentioned. To construe the statute to exclude GICs and DACs from coverage would be to broadly interpret the exclusionary clauses.

Under Minn.Stat. § 645.08 (1986), words are to be construed "according to their common and approved usage" unless they have acquired some special meaning. All parties to this action seem to agree that, without the narrow or unusual definition of annuity contract contained in the statute, such unallocated annuities would be covered and thus included in the assessment base.

■ Testimony at the administrative hearing did not show that the term "annuity contract" has been accorded any special meaning. Further, the purpose of judicially construing any statute is to determine

the intent of the legislature. Minn.Stat. § 645.16. In ascertaining legislative intent, we may consider other statutes concerning the same subject matter. *E.g.,* *County of Hennepin v. County of Houston,* 229 Minn. 418, 420–22, 39 N.W.2d 858, 859–60 (1949); *In re Estate of Messerschmidt,* 352 N.W.2d 774, 776–77 (Minn.Ct. App.1984).

Minnesota Statutes Sections 61A.01–61A.52 (1986) deal with the insurance industry and annuity contracts in the context of life insurance industry. At the administrative hearing, most of the witnesses testified that GICs and DACs would be considered annuity contracts under Chapter 61A.

It is well-settled that where evidence is conflicting or more than one inference may be drawn from the evidence, the hearing examiners findings must be upheld. *In re Kern Grain Co.,* 369 N.W.2d at 569. In this case, the Commissioner of Commerce, as well as the administrative law judge, determined that the Association erred in eliminating the unallocated annuities from the assessment base.[1] The record presents an adequate basis for the Commissioner's decision.

Throughout the administrative hearing, the parties complained about the ambiguous wording of the statute. "When the meaning of a statute is doubtful, courts should give great weight to a construction placed upon it by the department charged with its administration." *Krumm v. R.A. Nadeau Co.,* 276 N.W.2d 641, 644 (Minn. 1979). The applicable case law and rules of statutory construction favor the Commissioner's decision to afford GICs and DACs coverage under the Act.

The $6 million assessment levied is far in excess of the projected liability of $290,000 to Minnesota policyholders on November 1, 1987. The Association argues that, since the direct impact of this case on Minnesota policyholders is minimal and no Minnesota

policyholders are in jeopardy, the court should adopt the Association's interpretation of the statute and seek legislative amendment to the Act to specifically include unallocated annuities. However, this argument ignores the public policy implication of the decision. An insurer selling GICs and DACs to pension funds could find itself in financial trouble before the legislature could act. We find that it is clear the legislature intended that those who place their money in pension funds be protected.

3. The Association argues that the Commissioner erred when he determined that GICs and DACs were "supplemental to" annuity contracts under Minn.Stat. § 61B.02., subd. 1. Although the Commissioner primarily based his decision on the premise that GICs and DACs are supplemental to annuity contracts, a finding not proposed by the ALJ, the Commissioner alternatively adopted the ALJ's recommended findings that GICs and DACs are annuity contracts within the meaning of the statute.

We believe the Association correctly contends that GICs and DACs are not "supplemental to" anything. Evidence at the hearing shows the annuity option contained in such contracts is one possibility of the GIC or DAC. For example, if the pension fund trustee decided to exercise an annuity option contained in a DAC or GIC, the trustee would then enter into a supplemental contract. However, since there is sufficient evidence to uphold the Commissioner's decision based on direct coverage of DACs and GICs as annuity contracts, we will not address this question in detail.

4. The Association finally contends that if this court determines the assessment was computed on an improper base, only the assessments of the Association members appealing from their assessments should be recalculated. The ALJ concluded that since the assessment was wrongfully computed, it is void and must be recalculat-

---

**1.** Seven members of the nine member board of directors of the Guaranty Association represent companies which benefit financially from the board's interpretation of the statute. We believe

this represents a serious conflict of interest and call the legislature's attention to such conflicts in the assessment procedure.

ed for all Association member insurers. The Commissioner adopted the ALJ conclusion in his decision. The Association takes the position that the assessment is only voidable.

The Association was formed as a mechanism for assessing its member insurers. Minnesota Statutes Section 61B.07, subdivision 3(b) provides:

> [A]ssessments against member insurers for each account shall be in the proportion that the premiums received on business in this state by each assessed member insurer on policies covered by each account bear to premiums received on business in this state by all assessed member insurers.

In *Minnesota Farmers Mutual Insurance Co. v. Landkammer*, 126 Minn. 245, 247, 148 N.W. 305, 306 (1914), the court held that where legislation requires a uniform, pro rata assessment, a nonuniform assessment cannot be sustained.

Past practices in Minnesota support the Commissioner's order for recalculation. When courts modify a power company consumer rate increase, refunds are given to all power purchasers, not just to parties appealing. More on point would be an appeal by commercial power purchasers from a major utility company. If rates are reduced, realigned, etc., the new rate is applied to all members of the power class, not just those appealing the decision.

The Association argues that if this court affirms the Commissioner's decision, it will be placed in an "intolerable administrative position" because it will be required to return the promissory notes and cash paid by about 250 members, as well as levy a new assessment. We do not accept the Association's argument. Requiring some of the Association's insurers to bear a disproportionate amount of the burden would violate the statutory mandate. Finally, if this court adopts the Association's position, those companies who would have to pay a greater share under the Commissioner's interpretation would not have their assessments subject to recalculation.

## DECISION

The record supports the decision of the Commissioner of Commerce determining that GICs and DACs are covered annuities under Minn.Stat. § 61B.03, subd. 3 (1984). We affirm and direct the Minnesota Life and Health Insurance Guaranty Association to recalculate assessments for all member insurers consistent with this opinion.

Affirmed.