927 P.2d 806

**ARIZONA LIFE & DISABILITY INSURANCE GUARANTY FUND, an Arizona State Agency, Plaintiff–Counterdefendant–Appellant,**

v.

**HONEYWELL, INC., a Delaware Corporation, and First Trust National Association, a Corporation, Defendants–Counterclaimants–Appellees.**

No. 1 CA–CV 95–0125.

Court of Appeals of Arizona, Division 1, Department C.

May 21, 1996.

Review and Cross-Petition for Review Granted Nov. 19, 1996.

Grant Woods, Attorney General by Sydney K. Davis, Chief Counsel Consumer Protection & Antitrust Section and W. Mark Sendrow, Assistant Attorney General and Guttilla & Murphy, P.C. by Nicholas C. Guttilla, Phoenix, for Appellant.

Snell & Wilmer, L.L.P. by John J. Bouma and Patrick G. Byrne, Phoenix, and Popham, Haik, Schnobrich & Kaufman, Ltd. by David L. Hashmall and Karen R. Cole Minneapolis, MN, for Appellees.

Donna M. Killoughey, P.C. by Donna M. Killoughey, Tempe and Ballard, Spahr, Andrews & Ingersoll by David H. Pittinsky and Lawrence D. Berger, Philadelphia, PA, for Unisys Corp., Amicus Curiae.

## OPINION

LANKFORD, Judge.

The Arizona Life and Disability Insurance Guaranty Fund ("the Fund") filed an action for declaratory relief in superior court seeking a declaration that it was not obligated to cover losses suffered by an employee retirement plan operated by Honeywell, Inc. The Fund moved for summary judgment. Honeywell and the plan trustee, First Trust National Association ("the trustee"), filed a cross-motion for summary judgment. The trial court entered judgment for Honeywell and the trustee. The Fund timely appealed, and we have jurisdiction pursuant to Ariz. Rev.Stat. Ann. ("A.R.S.") section 12–2101(B) (1994).

The issue presented is whether the Fund must assure payments by an insurer which had entered into Guaranteed Investment

Contracts ("GIC's")[1] with the plan trustee. We hold that the trial court erred in holding that GIC's are annuities covered under Arizona's life and disability insurance guaranty statutes, and accordingly we reverse the judgment.

## I.

 We review the summary judgment de novo. *United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App. 1990). Issues of statutory interpretation are also reviewed de novo. *Hawkins v. Department of Econ. Sec.*, 183 Ariz. 100, 103, 900 P.2d 1236, 1239 (App.1995).

Honeywell is a Delaware corporation with its principal place of business in Minnesota. It operates manufacturing and research facilities in various locations in Arizona. Honeywell sponsors employee retirement plans for its employees. The assets of Honeywell's employee retirement plan are held in trust and are managed by the trustee.

Honeywell's employees voluntarily participated in the retirement plan. Employees elected to deduct a designated percentage from their pay to be invested on their behalf. Employees could select from among several different investment programs.

More than 7,000 of Honeywell's Arizona employees selected what was designated the "fixed income" or "protected interest" option. For those employees who selected this option, the trustee invested approximately 21 million dollars with the Executive Life Insurance Company ("ELIC"). ELIC was a California insurance corporation authorized to do business in Arizona.

The trustee purchased four GIC's from ELIC in January and April of 1988. The four contracts were substantially similar.[2] Each named the trustee as the owner of the contract. As owner, the trustee was entitled to "exercise every contract right and enjoy every contract provision without the consent of any [Honeywell employee retirement plan] participant."[3]

The trustee deposited a specified amount, either in a lump sum or in installments, with ELIC. Each GIC issued by ELIC provided a guaranteed interest rate on the deposit. Each GIC had a set maturity date at which time ELIC was obligated to pay the full "fund value." "Fund value" was defined in the contracts as "the sum of all deposits, less any withdrawals and scheduled payments, plus interest earned at the guaranteed rate...." Each GIC provided for annual payments of accrued interest to the trustee. Each GIC also provided that the full fund value was to be paid not in one installment but in a specified number of yearly installments.

Deductions from the fund value of the GIC's were allowed without penalty under specified conditions.[4] . Each GIC contained what we will refer to as "payout provisions":

> The Owner may direct [ELIC] to purchase an individual annuity contract for a participant before the retirement date. [ELIC] will withdraw the cost of annuity benefits for the participant on the date it withdraws

---

**1.** The definition of a GIC varies. Recent Arizona legislation defined the term "Guaranteed Investment Contract" as

an investment contract, funding agreement or guaranteed interest contract in which an insurance company agrees to guarantee a fixed or variable rate of interest or a future payment that is based on an index or any other similar criteria and that is payable at a predetermined date on monies that are deposited with the insurance company without regard to the continuance of human life.

A.R.S. § 20–208 (Supp.1995). The term has also been defined as "a life insurance company contract under which (1) the contract holder places funds on deposit with the insurer; and (2) the insurer promises to repay the contract holder's deposit according to a schedule specified in the contract." Patricia O. McGlaughlin, *Guaranteed*

*Investment Contracts and Beyond: Investing in and Diversifying out of Insurance Company General Accounts*, ALI–ABA Course of Study, C670 ALI–ABA 145 (Nov. 15, 1991).

**2.** The contracts differed only in date of maturity, deposit limits, interest rate and whether deposits could be made in installments or in one lump sum.

**3.** The trust agreement between Honeywell and the trustee also provided that "the trustee shall be the sole owner of all such contracts...."

**4.** The contracts do not state the conditions under which there would be a penalty for early withdrawal of any of the funds placed on deposit.

the amount. The owner may also withdraw all or part of the fund value to provide for plan benefits, in accordance with the [Honeywell employee retirement plan's] provisions.[5]

If funds were withdrawn before the contract maturity date, interest payments on the amounts withdrawn ceased. Although the trustee could have withdrawn funds from the ELIC GIC's to purchase annuities on behalf of Honeywell's employees, it is undisputed that it made no such withdrawals.

Upon retirement, a plan participant could select three types of annuities: a life annuity, an annuity covering the participant for life with the remainder to a beneficiary, or a joint and survivor annuity.[6] When the trustee purchased annuities for retiring employees, it purchased the annuities from other insurance companies.[7] However, if a retiring employee did not wish to select an annuity, Honeywell's retirement plan allowed several other options, including a lump-sum distribution, a deferred lump-sum distribution, and payment over a term of years.

When an employee died, Honeywell's retirement plan provided three options for the surviving beneficiary. The survivor could request full payment of the dollar value of the deceased employee's accrued benefits in a lump sum, payment over a term of years, or payment in the form of an annuity to provide retirement income for the life of the beneficiary.

ELIC was declared insolvent, ordered liquidated and placed in receivership by a California court in December of 1991. Honeywell submitted a claim to the Fund for coverage of losses sustained by the plan, on behalf of plan participants who reside in Arizona. The Fund responded with the declaratory judgment action that is the subject of this appeal.

## II.

Because the issue in this case depends on whether Arizona's guaranty fund statute covers guaranteed investment contracts, we begin with an analysis of the relevant statutory provisions.

In 1977, the Arizona Legislature established the Life and Disability Guaranty Fund. *See* 1977 Ariz. Sess. Laws ch. 136, § 4 (implementing A.R.S. § 20–681 *et seq* ). The legislation was patterned after a model act developed by the National Association of Insurance Commissioners.

Although no statement of intent was adopted by the Arizona Legislature, the drafters of the model act wrote that the purpose of such a guaranty fund is "to protect policy-owners, insureds, beneficiaries, annuitants, payees and assignees against losses ... which might otherwise occur due to an impairment or insolvency of an insurer."

Under the Arizona statutes, all member insurers [8] are required to be members of the Fund as a condition of their authority to transact insurance in Arizona. A.R.S. § 20–683(A) (1990). All costs, expenses and liabilities of the Fund are paid from assessments levied against the member insurers. A.R.S. § 20–683(C) (1990).

When a non-Arizona insurer becomes impaired,[9] the Fund is obligated to

---

5. Honeywell's retirement plan allowed for distribution of retirement benefits upon retirement, disability, death or termination of employment.

6. The GIC's contracts provided that, once the trustee applied for "an individual retirement annuity contract ... [t]he contract will be owned by the [employee retirement plan] participant, and will specify the dates and amounts of payments...."

7. If the retiring employee selected the annuity option, the retirement plan provided that the trustee would select the insurance company from which the annuity would be purchased.

8. A member insurer is any person authorized to transact any kind of insurance to which the provisions of the guaranty fund apply. A.R.S. § 20–681(4) (1990).

9. An impaired insurer is defined as "[a]n insurer which becomes insolvent and is placed under a final order of liquidation, rehabilitation or conservation ... [or][a]n insurer deemed by the director to be unable or potentially unable to fulfill its contractual obligations." A.R.S. § 20–681(3)(a)–(b) (1990).

1. Guarantee, assume or reinsure ... the covered policies of residents.

2. Assure payment of the contractual obligations of the impaired insurer to residents [and]

3. Provide such monies, pledges, notes, guarantees or other means as are reasonably necessary to discharge such duties....

A.R.S. § 20–685(D) (Supp.1995).

However, the Fund's obligations are limited to certain kinds of insurance, namely:

to direct life insurance policies, disability insurance policies, annuity contracts and contracts supplemental to life and disability insurance policies and annuity contracts issued to residents of this state by persons authorized to transact insurance in this state....

A.R.S. § 20–682(A) (Supp.1995). The question of the Fund's obligation to cover the losses suffered by Honeywell's employee retirement plan after ELIC's liquidation depends on whether the GIC's are included in section 20–682 as "annuity contracts ... issued to residents of this state...."

**A.**

■ The first question is whether the GIC's were "issued to residents of this state." The Fund argues that they were issued to the non-resident trustee. While the trustee was legal owner of the GIC's, the equitable owners were the beneficiaries of the retirement plan trust. Many of the beneficiaries were Arizona employees of Honeywell. The contracts were "issued to" Arizona residents even though the trustee held legal title. See *Unisys Corp. v. Pennsylvania Life and Health Ins. Guar. Ass'n,* 667 A.2d 1199, 1204 (Pa.Commw.Ct.1995) (resident employees protected under Pennsylvania's Guaranty Fund even if owner of GIC's was the trustee of the employee benefit plan); *cf. Estate of Pilafas v. Arizona Zoological Soc'y,* 172 Ariz. 207, 210, 836 P.2d 420, 423 (App.1992) ("[T]he creation of a trust involves the present transfer of property interests in the trust corpus to the beneficiaries."); *Dunlap Investors, Ltd. v. Hogan,* 133 Ariz. 130, 132, 650 P.2d 432, 434 (1982) ("[E]quitable title ... constitutes a vested interest in the property it-

self...."). *But see Bennet v. Virginia Life, Accident and Sickness Ins. Guar. Ass'n,* 251 Va. 382, 468 S.E.2d 910, 913 (1996) (GIC's were issued to plan trustee, not plan participants, and were owned by trustee).

We agree with Honeywell that the Fund's interpretation of the phrase "issued to residents" leads to anomalous results. It would be possible under the Fund's construction for employees who are residents of other states to invoke the protection of Arizona's fund merely because an Arizona resident was trustee of their retirement plan. That would expose the Fund to coverage of benefits owed to unknown numbers of non-Arizonans, based merely on the selection of an Arizonan as trustee. On the other hand, the Fund's interpretation would deny coverage to Arizona employees merely because their trustee was not a resident of this State. That result would disserve the legislative purpose, which is to protect the interests of resident policyholders and insureds from the consequences of insurers' impairment. *See Mail Boxes, Etc. v. Industrial Comm'n,* 181 Ariz. 119, 122, 888 P.2d 777, 780 (1995) (terms in a statute should be defined in a way that "avoids absurdity and fulfills the legislature's purpose").

Accordingly, we hold that the GIC's are not disqualified from Fund coverage on the theory that they were issued to a non-resident trustee.

**B.**

The next question arising under the statute is whether the GIC's were "direct" annuities. Assuming that the GIC's were annuities, the Fund argues that they were not "direct" annuities because they lacked privity of contract between the insurer and the persons insured: ELIC's contracts were with the plan trustee, not with the plan participants. Honeywell and the trustee counter that the word "direct" is intended only to exclude reinsurance contracts from the protection of the Fund.

■ We need not resolve the debate about the meaning of the word "direct" because there was a "direct" relationship between

ELIC and the plan participants even as the Fund defines the term. Because the employees were beneficiaries of the trust and had equitable ownership of the GIC's, the relationship between ELIC and the employees was direct. The relationship is illustrated by ELIC's obligation to issue an annuity to an employee at the request of the trustee if an employee retired and selected the annuity option. Although the relationship between ELIC and the employees was facilitated by a trustee, the relationship was nevertheless direct. The GIC's are not disqualified from Fund protection on the ground that they are not "direct" annuities.

### C.

■ We reverse the trial court's judgment in favor of Honeywell and the trustee because we hold that GIC's are not "annuity contracts."[10] The Fund statutes do not define the term, but elsewhere the term "Annuities" is defined. That term

> encompasses all agreements to make periodic payments ... where the making or continuance of all or some of a series of such payments, or the amount of such payment, is dependent upon the continuance of human life.

A.R.S. § 20–254.01 (1990).

Honeywell contends that the GIC's were annuities for two reasons. First, it argues that the GIC's themselves are annuities because they provided that ELIC would make life-contingent periodic payments. Second, Honeywell argues that the payout provisions requiring ELIC to issue an annuity to a Honeywell employee on the trustee's request satisfies the definition of annuity. We disagree with both contentions.

The GIC's themselves are not annuities because payments under the GIC's are not life-contingent. Under the terms of the GIC's, the trustee deposited specified sums with ELIC. ELIC then agreed to pay the fund value—accrued interest and principal—in yearly installments. Honeywell argues that these yearly installments constituted "periodic payments" as contemplated by A.R.S. section 20–254.01. Honeywell also contends that these payments were "dependent upon the continuance of human life" because the GIC's provided that amounts could be withdrawn from the fund value if a Honeywell employee died.

Honeywell's claim that the GIC's were life-contingent rests on a part of the retirement plan. The plan allowed for distribution of benefits upon the death of the employee. The GIC's in turn accommodated the plan provision by allowing the trustee to withdraw all or part of the fund value to provide for plan benefits, including the distribution upon death. Honeywell argues that the periodic payments of the fund value to the trustee were life-contingent because—if an employee died—the trustee could make withdrawals to pay plan benefits. If this occurred, then some of ELIC's payments to the trustee would depend on the continuance of a human life.

The death benefit payout provision does not make the GIC's themselves annuities. Arizona's definition of annuities requires that some or all of the payments from the finan-

---

**10.** Recent Arizona legislation specifically excludes GIC's from coverage under the guaranty fund. *See* 1995 Ariz. Sess. Laws ch. 19, § 2 (adopting A.R.S. § 20–682(B)(4) (Supp.1995)). However, the statutory amendment does not apply in this case. The legislation provided that it "does not affect currently pending litigation concerning guaranty fund coverage for guaranteed investment contracts...." 1995 Ariz. Sess. Laws ch. 19, § 3. The litigation that is the subject of this appeal was pending at the time of enactment.

We cannot interpret the recent legislation as revealing the Legislature's intent regarding applicability of the guarantee fund to the GIC's involved here. On the one hand, the recent legislation may be viewed as merely clarifying existing law. If that were the case, then we could hold that the Legislature had always intended that GIC's not be covered under the guaranty fund. On the other hand, the recent legislation may be viewed as a substantive change in existing law. If so, we could hold that prior law required that GIC's be covered, but that the Legislature made a substantive change in the law to eliminate coverage in future cases.

Nothing in the recent legislation or its history reveals whether it was a clarification or a substantive change. Indeed, by providing that the legislation does not apply to pending litigation, the Legislature indicated that the courts are to analyze the prior statute without reference to the recent legislation.

cial institution to the annuitant "*is* dependent upon the continuance of human life." A.R.S. § 20–254.01 (1990) (emphasis added). Honeywell's interpretation of the statute would require us to hold that a contract is an annuity if the making or amount of the payments "may" depend on the continuance of human life, or if the payments "potentially" depend upon the continuance of human life. ELIC's payments were not affected by the death of an employee alone, but were affected only if the trustee also elected to pay the employee's benefits by a withdrawal from the GIC. This further condition means that payments under the GIC's did not depend on the continuance of human life.

Because the GIC's themselves were not life-contingent, they resembled bank certificates of deposit more than annuities. Indeed, Honeywell's description of the GIC's to its employees represented that the GIC's were similar to bank investments at a guaranteed interest rate. In explaining the fixed income fund, Honeywell wrote that "[t]he Fixed Income Fund invests in insurance company investment contracts, bank investment contracts, and money market investments." It also noted:

> The Fund assets are invested primarily in insurance company investment contracts, which are issued by insurance companies and are usually for substantial amounts of money.... The Plan agrees to invest money with the insurance company for a fixed time, usually one to five years. In return, *the insurance company agrees to pay a fixed rate of interest and return the principal upon maturity of the contract.*
>
> *Bank investment contracts are similar to insurance company investment contracts except they are offered by banks rather than insurance companies.*

(Emphasis added). Although Honeywell's characterization of the trustee's investments in GIC's is not dispositive, it does suggest that GIC's are analogous to bank certificates of deposit, not to annuities. *Cf. Bennet v. Virginia Life*, 468 S.E.2d at 913 (GIC's are not annuities within statutory definition re-

quiring periodic payments for either a stated period or for the duration of a life; "Rather, the GIC's provide only for the accumulation of value at a specified rate of interest and for the withdrawal of the accumulated value upon certain conditions.").

Honeywell cites *Board of Trustees of the Maryland Teachers & State Employees Supplemental Retirement Plans v. Life & Health Ins. Guar. Corp.*, 335 Md. 176, 642 A.2d 856 (1994) for its argument. The issue in *Board of Trustees* was whether GIC's sold by ELIC to the trustee of the state employee retirement plan were covered policies under Maryland's guaranty fund provisions.

Under Maryland law, the provisions of the guaranty fund law were applicable to "direct life insurance policies, health insurance policies, annuity contracts, and contracts supplemental to ... annuity contracts issued by persons authorized to transact insurance in this State." 642 A.2d at 858 (quoting Md. Code. Ann. Ins. § 522(1) (1957)). The Maryland Fund's obligations when a foreign insurer became impaired were the same as the obligations of the Arizona Fund when a foreign insurer is impaired. *See* A.R.S. § 20–685(D) (Supp.1995). Maryland law further defined annuity as

> all agreements to make periodical payments where the making or continuance of all or some of a series of such payments, or the amount of any such payment, is dependent upon the continuance of human life.

*Board of Trustees*, 642 A.2d at 859 (quoting Md.Code Ann. Ins. § 65 (1957)).

The court in *Board of Trustees* addressed the Guaranty Fund's argument that the payout provisions in the GIC's were not life-contingent.[11] In rejecting this argument, the court wrote:

> ELIC could be called upon, whenever a participant died, to pay its pro rata share of that participant's account in the Plan. This amount would be the initial value of the share together with interest at the guaranteed rate, compounded daily. The actual return which ELIC might have real-

---

11. The ELIC GIC's issued to the trustee in *Board of Trustees* contained the same payout provisions as the GIC's issued to the trustee in this case.

*See Board of Trustees*, 642 A.2d at 860 (setting forth the language of the payout provisions).

ized on its investment of the premium deposits ... as of the times of demands for payments generated by death or illness of participants, could have been below the amount which ELIC had promised to pay the Board. Thus, ELIC's assumption of the economic risk was life-contingent. Indeed, ELIC's contractual assumption also included the risk, however remote, that a catastrophe or epidemic would result in the deaths of large numbers of participants in a relatively brief span of time.

*Board of Trustees,* 642 A.2d at 861.

We disagree with the conclusion in *Board of Trustees* that the death benefit payout provision makes the GIC's themselves life-contingent. The court in *Board of Trustees* noted that ELIC *could* be called upon to pay sums out of the fund value of the GIC's if an employee died. The very rationale in that case was that it was sufficient that ELIC's payments were *potentially* life-contingent. We do not agree that the definition of annuity under Arizona law can be read to include an arrangement that makes the life-contingent nature of the periodic payments speculative.

The court in *Board of Trustees* also relied heavily on considerations not present in this case. First, the court relied on administrative treatment of GIC's as covered annuities.[12] Maryland's Insurance Commissioner had approved GIC policy forms, evidencing an administrative interpretation in favor of coverage. *Id.* at 863. Also, administrative

regulations adopted pursuant to Maryland's guaranty fund law defined group annuities as contracts *"purporting* to provide annuity benefits to more than one person." *Id.* at 865 (emphasis in original). Second, the court cited evidence of legislative acquiescence to the administrative decision to include GIC's in Maryland's guaranty fund law. Maryland law provided a specific method for evaluating GIC's, and the court concluded from this fact that the Legislature knew that GIC's were being written by life insurance companies in Maryland at a time when the Insurance Commissioner had determined that GIC's were covered under the guaranty fund law. *Id.* at 864. The court also noted that the Maryland legislature had rejected four bills that would have excluded GIC's from coverage under the guaranty fund. *Id.* at 865–66. The court held that the failed amendments to the guaranty fund laws evidenced legislative acquiescence to the administrative practice of treating GIC's as covered annuities. *Id.* at 866.

We are not under any similar compulsion to follow an administrative practice to include GIC's as covered annuities. No administrative body in Arizona has determined that GIC's are covered under Arizona's guaranty fund provisions.[13] We interpret the statutes without any prior administrative practice of accepting these contracts for coverage or of making fund assessments based on these contracts.[14] Because we are not constrained

12. The same is true of the decisions in *Unisys Corp. v. Pennsylvania Life and Health Ins. Guar. Ass'n,* 667 A.2d 1199 (Pa.Commw.Ct.1995) and *Minnesota Life & Health Ins. Guar. Ass'n v. Department of Commerce,* 400 N.W.2d 769 (Minn. App.1987). Both of these decisions relied on administrative interpretations favoring coverage. In *Unisys,* Pennsylvania's Insurance Commissioner had approved the contracts as annuity contracts. *Unisys,* 667 A.2d at 1203–04. The court noted that "[c]onstruction of a statute by those charged with its administration is entitled to great weight and should not be disregarded unless clearly erroneous." *Id.* at 1204. In *Minnesota Life,* the court merely upheld an administrative law judge's holding that GIC's are covered annuities. The court noted that "[a]gency decisions enjoy a presumption of correctness" and that an agency determination is to be upheld if "lawful and reasonable." *Minnesota Life,* 400 N.W.2d at 772. The court in *Minnesota Life* did not itself review the definition of "annuity con-

tract" to determine if GIC's were included in the definition, but rather deferred to the administrative findings.

13. Honeywell claims that an opinion of the Arizona Attorney General favors a finding of coverage. In an opinion written in 1983, the Attorney General wrote that the guaranty fund "covers individual lives insured under a group policy." Op. Ariz. Att'y Gen. I83–053 (R83–036) (May 11, 1983). This opinion is not helpful because it lacks any factual context. At best, the opinion demonstrates that coverage will not be denied to "a master plan encompassing many individual lives." *Id.* Even if group insurance policies or annuities are covered, this does not answer the question of what constitutes an annuity.

14. The Fund argues that the insurance department has by inaction determined that GIC's are not covered under the guaranty fund law. It

by administrative interpretations in favor of coverage, we can interpret the definition of annuity according to its plain meaning: payments which depend in whole or in part on the continuance of human life rather than payments which might be contingent on the continuance of human life.

■ Honeywell's second argument is that the GIC's are annuities because the payout provisions provide for the purchase of an annuity from the fund value of the GIC's upon the retirement of a Honeywell employee. We also reject this argument. The possibility that an annuity would be purchased is even more speculative than the possibility of a withdrawal to pay the benefits upon death.

The provision allowing the purchase of an annuity is not itself an annuity. Rather, it is a clause accommodating a provision of the pension plan for purchase of an annuity. ELIC's contract accommodated this plan provision by allowing withdrawals to pay for the annuity.[15] The annuity entitled the employee to payments of retirement income for his or her life. After the employee exercised this option, the employee was designated as the owner of the annuity.

Whether an annuity would be purchased was entirely speculative. First, an employee who invested in the fixed income fund must have retired. Second, the employee would had to have selected the annuity option from the number of options available under Honeywell's retirement plan.[16] Third, the

trustee must have elected to direct ELIC to purchase the annuity by withdrawing money from the fund value of the GIC's, as opposed to purchasing an annuity from other funding sources. Given the contingencies that stood in the way of a purchase of an annuity under ELIC's contracts with the trustee, we cannot hold that the payout provisions mean that the GIC's are "annuity contracts." *See Bennet v. Virginia Life,* 468 S.E.2d at 914 (holding that payout provisions in a GIC which allowed the trustee to determine whether an annuity would be purchased from the insurer did not guarantee annuity benefits because "[a]n undertaking to purchase an annuity in the future is not a present guarantee of annuity benefits.").

We conclude that the GIC's issued by ELIC to the trustee are not "annuity contracts" entitled to coverage under Arizona's Life and Disability Insurance Guaranty Fund. We therefore reverse the trial court's entry of summary judgment in favor of Honeywell and the trustee and remand for entry of summary judgment in favor of the Fund.

FIDEL, P.J., and SULT, J., concur.

---

notes that the insurance department has never applied the "form filing" requirements to GIC's and that ELIC was never required to pay premium taxes on the GIC's. *See* A.R.S. § 20–1110 (1990) (providing that the director must approve any life or disability insurance form before the form may be issued for delivery); A.R.S. § 20–224(A) (Supp.1995) (requiring the payment of premium taxes on "premium income ... and all other considerations for insurance ..." but not on "[c]onsiderations received on annuity contracts ...."); *see also* A.R.S. § 20–254.01 (1990) ("Except as exemption or other provision is made, all provisions of [Title 20] applicable to life insurance shall be deemed applicable also to annuities."). The parties have not briefed the applicability of the form filing requirements or of the premium tax to annuity contracts. Assuming that an annuity contract is subject to these two requirements, we do not agree with the Fund that administrative inaction is evidence of an administrative interpretation to the effect that

GIC's are *not* covered annuities. No Arizona administrative agency has addressed the question of whether or not GIC's are covered annuities under Arizona's guaranty fund provisions.

15. It was only when an employee retired that the trustee could direct ELIC to withdraw money from the fund value of the GIC's to purchase an annuity. When an employee was otherwise entitled to benefits—upon death, disability and termination—the contract with ELIC provided that the trustee could withdraw funds to pay the employee's benefits. In the latter situation, there was no requirement that ELIC purchase an annuity for the employee.

16. As noted, Honeywell's retirement plan allowed the retiring employee to select from among *several benefit payment options*, including a lump-sum distribution, a deferred lump-sum distribution, and payment over a term of years.