CONNECTICUT GENERAL LIFE IN-
SURANCE COMPANY, Metropolitan
Life Insurance Company, and New
York Life Insurance Company, Peti-
tioners

v.

PENNSYLVANIA LIFE AND HEALTH
INSURANCE GUARANTY ASSOCIA-
TION, Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 7, 2004.

Decided Jan. 12, 2005.

P. Kevin Brobson, Harrisburg, and Richard R. Spencer, Jr., Florham Park, NJ, for petitioners.

William Carlisle Herbert, Chicago, IL, for respondent.

William R. Balaban, Harrisburg, and Brian F. Kreger, Seattle, for intervenor.

BEFORE: FRIEDMAN, Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Connecticut General Life Insurance Company, Metropolitan Life Insurance Company, and New York Life Insurance Company (Petitioners or Member Insurers) appeal from the order of the Insurance Commissioner of the Commonwealth of Pennsylvania (Commissioner) granting Pennsylvania Life and Health Insurance Guaranty Association's (PLHIGA) motion for summary disposition.[1] We affirm.

On December 16, 1997, PLHIGA recalculated earlier assessments made to certain insurers, including Member Insurers, that had become "insolvent insurers" pursuant to the Life and Health Insurance Guaranty Association Act, Act of November 26, 1978, P.L. 1188, *as amended*, 40 P.S. §§ 1801–1824 (1978 Act), repealed by Act of December 18, 1992, P.L. 1519, 40 P.S. §§ 991.1701–991.1717. Sections 991.1701–991.1717 are similar to repealed sections of the 1978 Act.[2] Prior to 1997, PLHIGA had taken the position that unallocated annuity contracts were not "covered policies" within the meaning of the 1978 Act. Therefore, when it calculated an assessment made against a Member Insurer it did not include as assessable premiums any amount that a Member Insurer reported as having been received in connection with premiums on unallocated annuity contracts, including guaranteed investment contracts (GICs). This changed with this Court's decision in *UNISYS v. Pennsylvania Life and Health Insurance Guaranty Association*, 667 A.2d 1199 (Pa. Cmwlth.1995), *affirmed without opinion*, 546 Pa. 256, 684 A.2d 546 (1996).

In *UNISYS*, we determined that unallocated annuity contracts and GICs are covered policies under the 1978 Act. Following this ruling PLHIGA began including unallocated annuity contracts and GICs in its premium assessment base when making assessments against Member Insurers. As such, PLHIGA issued the 1997 assessment against Member Insurers at issue in this case. Obviously, this increased the premiums of the Member Insurers and they appealed the increase first to PLHIGA and then to the Commissioner.

The Commissioner noted that while the record involved was voluminous, the parties did agree on the facts material to

---

1. A brief in support of the decision of the Commissioner was filed by Intervenors Conseco Companies, Fidelity & Guaranty Life Insurance Company, The Variable Annuity Life Insurance Company, IDS Life Insurance Company, a subsidiary of American Express Financial Advisors, Inc., Northwestern Mutual Life Insurance Company, Equitable Life Insurance Company of Iowa and USG Life and Annuity and PFL Life Insurance Compa-

ny, a subsidiary of AUSA Life Insurance Company, Inc.

2. Section 21 of the Act of December 18, 1992, provides: "Notwithstanding the repeal in section 20, any insurer declared insolvent by a court of competent jurisdiction prior to the effective date of this act shall be governed by the [1978 Act]."

deciding the core legal issues. The Commissioner decided that based on a clear and unambiguous reading of the 1978 Act, PLHIGA had the authority to reassess the policies. The Commission further determined that *UNISYS* was not being applied retroactively. Accordingly, PLHIGA's motion for summary disposition was granted.

Petitioners raise the following issues in their appeal to this Court: (1) whether PLHIGA lacked the authority to assess member insurers for assessments made in prior years; (2) whether the methodology PLHIGA used in calculating re-assessments was inconsistent with the Act and this Court's decision in *UNISYS*; and, (3) whether the recalculations of the assessments violate PLHIGA's fiduciary duties to its member insurers which write unallocated annuity contracts.

▰▰▰ Our scope of review is as follows: This Court may not reverse or modify an agency adjudication unless the adjudication violates constitutional rights, is not in accordance with agency procedure or with applicable law, or unless any finding of fact necessary to support the adjudication is not based upon substantial evidence. 2 Pa.C.S. § 704. An agency's adjudication is not in accordance with law if it represents a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. *Slawek v. State Board of Medical Education & Licensure*, 526 Pa. 316, 586 A.2d 362 (1991). *Prudential Property and Casualty Insurance Co. v. Department of Insurance*, 141 Pa.Cmwlth. 156, 595 A.2d 649, 653 (1991). "[G]reat deference in favor of the Insurance Commissioner and the resulting narrow scope of review for the courts are in recognition of the expertise of the administrative agency or individual officer assigned the task of regulating a given in-

dustry." *Foster v. Mutual Fire, Marine and Inland Insurance Company*, 531 Pa. 598, 612, 614 A.2d 1086, 1093 (1992), *certiorari denied sub nom.*, 506 U.S. 1080, 113 S.Ct. 1047, 122 L.Ed.2d 356 (1993). However, while deference may be given to an agency's interpretation of its statute, where "the meaning of the statute is a question of law for the court, when convinced that the agency's interpretation is unwise or erroneous, the deference is unwarranted." *Rosen v. Bureau of Professional and Occupational Affairs, State Architects Licensure Board*, 763 A.2d 962, 968 (Pa.Cmwlth.2000), *petition for allowance of appeal denied*, 566 Pa. 654, 781 A.2d 150 (2001).

Following this Court's decision in *UNISYS*, PLHIGA required Member Insurers to pay an assessed portion on unallocated annuity contracts and GICs issued between 1991 and 1995. Member Insurers claim that the PLHIGA is inappropriately applying *UNISYS* retroactively.

The purpose of the 1978 Act was "to protect policyowners, insureds, beneficiaries, annuitants, payees, and assignees of life insurance policies, health and accident insurance policies, annuity contracts ... against failure in the performance of contractual obligations due to the impairment or insolvency of the insurer issuing such policies or contracts." Section 2 of the 1978 Act, 40 P.S. § 1802. To provide this protection PLHIGA is authorized as follows:

> For the purpose of providing the funds necessary to carry out the powers and duties of the association, the board of directors shall assess the member insurers, separately for each account, at such time and for such amounts as the board finds necessary.

Section 8(a) of the 1978 Act, 40 P.S. § 1808(a). PLHIGA is required to make

assessments on member insurers based on the premiums they have received on "covered policies." Section 8(c)(2) of the 1978 Act, 40 P.S. § 1808(c)(2).

■ As this Court ruled in *UNISYS* that unallocated contracts and GICs were "covered policies," the Commissioner determined that PLHIGA had the authority to make assessments against the member insurers, based on those contracts. Indeed, the Commissioner determined that PLHIGA had a statutory duty to make the assessment "for the purpose of providing the funds necessary to carry out the powers and duties of the association." Section 8(a) of the 1978 Act.

While Member Insurers argue that PLHIGA is applying *UNISYS* retroactively, the Commissioner properly noted that *UNISYS* did not make new law or change old law. It instead interpreted what constituted a "covered policy" under that 1978 Act. This determination differed from PLHIGA's prior determination of what constituted a "covered policy" and, therefore, merely provided a judicial interpretation of what the 1978 Act had really required since its inception.

There is no Pennsylvania case law involving the authority of PLHIGA to correct prior assessments that have been made inconsistently under the 1978 Act. However, other courts have considered and granted such authority. *See Minnesota Life & Health Insurance Guarantee Association v. Department of Commerce,* 400 N.W.2d 769 (Minn.Ct.App.1987) and *Liberty Mutual Insurance Co. v. Superintendent of Insurance,* 1997 ME 22, 689 A.2d 600 (1997). *Minnesota Life* is particularly on point as it determined that unallocated annuity contracts were covered under its guaranty statute. As such, the court determined that the association was required to recalculate its premium assessments for all association member insurers

in order to protect the future financial stability of the policyowners, beneficiaries, insureds, annuitants, payees and assignees.

The same situation occurred in the instant action. The purpose of 1978 Act is also to protect policyowners, insureds, annuitants, payees, and assignees from the insolvency of the insurer issuing such policies. In order to provide such protection, Section 8(a) of the 1978 Act provides that PLHIGA is authorized to assess Member Insurers "at such time and for such amounts as the board finds necessary." If PLHIGA cannot correct assessments that have been made contrary to the 1978 Act, then PLHIGA is stripped of its authority to protect policyowners, insureds, annuitants, payees, and assignees from the insolvency of the insurer issuing such policies as provided for under the 1978 Act. Such a determination would defeat the purpose of the 1978 Act.

The ruling by the Commissioner cannot be said to violate constitutional rights, agency procedure or applicable law. It also cannot be said that any finding of fact necessary to support the adjudication is not based upon substantial evidence. As noted by the Commissioner, PLHIGA was doing what was necessary to provide necessary funds to carry out its duties under the 1978 Act. As such, we deny this claim by Member Insurers.

■ Member Insurers next allege that the methodology PLHIGA used in recalculating assessments was inconsistent with the 1978 Act and this Court's decision in *UNISYS.* Member Insurers argue that only some of the premium received on unallocated annuity contracts was received "on business" in this Commonwealth. Pursuant to Section 8 of the 1978 Act, PLHIGA may only assess premiums received "on business" in the · Commonwealth. Member Insurers claim that some

of their contracts were issued to trustees of pension plans participating in several states. They argue that in *UNISYS*, PLHIGA was only found to be liable for pension plan participants who reside in Pennsylvania. Therefore, it can only assess premiums on plan participants who reside in Pennsylvania.

In *UNISYS*, this Court determined that PLHIGA was only liable, in a case of an insolvent foreign insurer, to residents of this state pursuant to Section 4 of the 1978 Act, 40 P.S. § 1804. Section 4 specifically defines a resident as a person who resides in this Commonwealth. When it made the recalculation of its assessments, PLHIGA based it on premiums reported by the Member Insurers that were received on unallocated annuity contracts issued to contract holders that reside in Pennsylvania and premiums received on allocated annuity contracts issued to individuals who reside in Pennsylvania.

Member Insurers claim that some of the unallocated annuity contracts are issued to trustees of pension plans and that some of the pension plans have plan participants who do not reside in Pennsylvania. Member Insurers argue it is improper to consider these individuals in the assessment. However, we note that PLHIGA must assess premiums pursuant to Section 8 of the 1978 Act. Section 8(b), 40 P.S. § 1808(b), requires that premiums assessed "against member insurers shall be in the proportion that the premiums received on business in each such state by each assessed member insurer on covered policies...." *See also* Section 8(a) and (c) of the 1978 Act for similar language.

As noted by the Commissioner, the pension plans are issued to trustees that reside in Pennsylvania and, as such, constitute "premiums received on business" in accordance with the 1978 Act. The Commissioner further noted that Member In-

surers do not even have information concerning what portion of each premium paid for unallocated annuity contracts issued to a pension plan was derived from money paid to each individual plan participant. Member Insurers also do not have information on each pension plan employee's geographic location and plan sponsors have not been contractually obligated to provide it.

As such, it appears that Member Insurers are asking PLHIGA to make assessments based on impossible standards that are not in accordance with the 1978 Act. Therefore, the above determinations by the Commissioner cannot be said to violate constitutional rights, agency procedure or applicable law. It also cannot be said that any finding of fact necessary to support the adjudication is not based upon substantial evidence. Thus, we deny this claim by Member Insurers.

Member Insurers further argue that it was improper for PLHIGA to recalculate assessments because Section 10(c) of the 1978 Act, 40 P.S. § 1810(c), provides that any assessment action must be appealed within thirty days of the challenged action.

We believe that this claim is completely without merit. As we noted above, Section 10(c) provides that any action of PLHIGA may be appealed to the Commissioner if it is appealed within thirty days of the action. This Section limits a party's ability to appeal a decision of PLHIGA. It does not limit PLHIGA's ability to make determinations like the ones at issue here.

Member Insurers' final claim is that the re-assessments violate PLHIGA's fiduciary duties to its member insurers which write unallocated annuity contracts. Member Insurers allege that PLHIGA has breached its fiduciary duty because it refuses to adopt Member Insurers' alternate assessment methodology. This alternate assess-

ment involves the issue discussed above, i.e., the question of residence within the Commonwealth. Member Insurers once again argue that PLHIGA is obligated to determine resident participants in each plan without providing any information on how PLHIGA could do so. Once again, it must be noted that pursuant to Section 8(b) of the 1978 Act, PLHIGA is required to assess premiums against member insurers in the proportion received "on business in each state" by each assessed member insurer on covered policies *See also* Section 8(a) and (c) of the 1978 Act for similar language. Since the trustees of the plan are all residents of Pennsylvania and the premiums received were "received on business" in Pennsylvania, the 1978 Act has been complied with. As PLHIGA has done what is required by the 1978 Act, it has not breached a fiduciary duty to any Member Insurers.

Accordingly, the order of the Commissioner is affirmed.

Judge LEAVITT did not participate in the decision in this case.

### ORDER

AND NOW, this 12th day of January, 2005, the order of the Insurance Commissioner of the Commonwealth of Pennsylvania is affirmed.

DISSENTING OPINION BY Judge SIMPSON.

The majority's thoughtful opinion ably addresses most of the difficult issues arising from remote application of the now-repealed 1978 Act[1] to unallocated annuity contracts. Nevertheless, I respectfully dissent from the majority's conclusion regarding the methodology of the assess-

ment. On this issue, I believe the Insurance Commissioner erred.

The Insurance Commissioner concluded that the words of the 1978 Act were clear and unambiguous. Therefore, she specifically declined to consider the fairness of the assessment. Reproduced Record at 1166a–68a. Thus, the Insurance Commissioner embraced a position that only the location of the annuity trustee defines whether a premium is attributable to business in this Commonwealth. This position exalts legal title to the unallocated annuity contracts.

However, I am persuaded that equitable title to the annuity contracts is also relevant. Under this interpretation, the location of the beneficiaries may be considered. The statutory language, "premiums received on business in this Commonwealth," is not so clear as to exclude this interpretation.

Because the statute is ambiguous when applied to the exotic annuity contracts in question, I would require some attention to the fairness of the assessment, which exceeds $24 million for the Petitioners here. For this reason, I would vacate and remand.

---

1. Life and Health Guaranty Association Act, Act of November 26, 1978, P.L. 1188, *as amended*, 40 P.S. §§ 1801–1824, *repealed by* the Act of December 18, 1992, P.L. 1519, 40 P.S. §§ 991.1701–991.1717.